1814.
*Philadelphia,*
*Wednesday,*
April 20.

FRENCH *against* REED and FORDE.

If a person, who is under no obligation to execute an order of insurance, nevertheless undertakes it, and executes it defectively, he is answerable for the loss.

THIS was an action on the case against the defendants, for not executing the plaintiff's order for insurance. The *Narr* contained two counts: The *first* stated, that the plaintiff being owner of goods to the value of 20,000 dollars on board the brig *Hiram*, at *Reedy Island*, bound to the island of *Hispaniola* and two ports of that island, the defendants at the request of the plaintiff, and in consideration of the plaintiff's promising to pay them a reasonable reward and commission, undertook to procure insurance to be made as aforesaid; that the said brig proceeded to *Cape François*, and in proceeding thence to *Gonaives*, the second port to which the defendants undertook to procure insurance, she was captured, and with her cargo lost; that the defendants neglected to procure the said insurance, whereby &c. The *second* count laid the promise to procure insurance from *Cape François* to *Gonaives*.

The cause was tried before the Chief Justice in *February* last, when a verdict was found for the plaintiff, damages 13,867 dollars 19 cents; and upon a motion by the defendants for a new trial, the case was reported as follows:

The plaintiff, having shipped on board the *Hiram* an invoice for his own account and risk of 20,208 dollars, and being about to sail in the vessel, on the 5th of *December* 1804, wrote a letter to the defendants from *Reedy Island*, requesting them to effect insurance immediately upon goods, valued at 20,000 dollars, as by a bill of lading enclosed, out only, to two ports in the island of *Hispaniola;* property warranted *American*, and premium to be covered.

There had been previous dealings between the parties, but at this time the plaintiff had no funds in the defendants hands, but on the contrary was their debtor, and his circumstances were not good.

On the 10th of *December*, the defendants wrote to *R. Fleming*, the general agent and attorney in fact of the plaintiff, informing him that the plaintiff had requested insurance, but unless they were made safe, *they must decline acting*. That a note for the premium must be given, and they gave him that notice that he might see what could be done. They would make enquiry among the offices about the premium.

On the 13th of *December*, they wrote to the plaintiff, informing him that the offices asked 20 per cent. for two ports, and would not take less than 15 per cent. to one port. That he had forgotten the note for the premium payable in three months, and that the *Hiram* would not return in time to pay the note. They said they were anxious to make the insurance, and had applied to his agent *Fleming* to make an arrangement upon the subject, but that difficulties had arisen; and they then mentioned *certain conditions*, on which they were willing to undertake to make insurance.

On the 17th of *December*, the defendants had 3500 dollars written by private underwriters for the plaintiff, at 10 per cent. from *Philadelphia* to *Cape François* or *Port de Paix* in *Hispaniola*.

On the 24th, they caused 8000 dollars to be underwritten by the *Union Insurance Company*, at 11 per cent. from *Philadelphia* to *one port* in *Hispaniola*, the goods valued at 23,000 dollars.

On the 27th, they wrote him, advising of their letter of the 13th, and of his omission to leave the premium note; that *Fleming* would not make the arrangement required; that they had insured to *one port out* as above, and expected to get the remainder done at *New York* and *Baltimore* for 11 per cent.; that he must exert himself to remit them, and that they had passed their own notes for the premium.

On the 18th of *January* 1805, they wrote him again, informing him that in consequence of the premiums to *Hayti* having risen, *they had waited for a fall*, and had fortunately heard of his arrival at *Cape François*, before they made any further insurance.

On the 24th of *December* 1804, the plaintiff wrote from *Gonâives*, that he had come from the *Cape* there, giving an account of some articles he had sold to the administration at the former place; that he should return to the *Cape* the next day; where he should sell, and purchase coffee at *Gonaives*.

On the 4th of *January* he wrote from *Cape François*, saying that he had landed the greater part of his cargo there, and had sold some which the defendants had in her; and requested them to insure no part of his property at present further than *Gonaives*. He wished them to insure 10,000 dollars home in the *Hiram*.

1814.

FRENCH
*v.*
REED
et al.

On the 2d and 6th of *February* he wrote from *Gonaives*, mentioning that the brig had left the *Cape* under *British* convoy, and that he was afraid she was captured by a *French* privateer. In case of capture he should abandon to the underwriters. That it was *very unfortunate for him*, as more than half of his goods were on board, *a good part of which he had sold to the administration at Gonaives*. He requested them to abandon the moment the capture was ascertained.

On the 24th of *February*, he wrote from *Cape François*, stating his surprize to find that they had insured only 11,500 dollars, and to one port; that on reflection he was convinced they must afterwards have extended it to two ports for the whole amount ordered by him. He then mentioned the amount of goods remaining on board the *Hiram*, that she was missing, and that he abandoned.

On the 26th of *February* the defendants wrote him that they had received advices of the brig's sailing under convoy from *Cape François*, and that they would endeavour to insure 10,000 dollars from the *Cape* to *Gonaives*, but were not sure it could be done; and

On the 4th of *March* they wrote, that by some of the offices a premium of 20 per cent. was asked for the risk with convoy; that the *Union* asked 17½, and they had offered 15, which they thought would have been taken, but a report of the capture arrived, which prevented any thing from being done.

The *Hiram* was captured on the 28th of *January* 1805, about three leagues from *Gonaives*, by a *French* privateer, at which time she had on board an invoice of 9038 dollars 92 cents belonging to the plaintiff, which was totally lost. The defendants had goods of their own on board, which were also lost; but on these they had effected insurance to *two ports*, by which they were covered.

Three questions were raised upon the trial. 1. As to the mode of estimating the damages, if the verdict should be for the plaintiff, the defendants claiming a premium of insurance, the usual deduction of two per cent., and an allowance for the goods sold to the administration of *Gonaives*. 2. As to the warranty of *American* property, the defendants' counsel contending that the warranty was broken, or at least the risk increased by that sale. 3. As to the defendants' liability,

the same counsel arguing that the defendants were not bound, because they had not undertaken to execute the order, but on the contrary had expressly declined it; and that afterwards they had gratuitously effected a different insurance, not under the order, but as a favour, to diminish as far as they could, the inconvenience arising from their refusal to execute the order.

The Chief Justice charged the jury

1. That as the plaintiff gave orders to 'cover, the jury, if they found in his favour should give him the cost of the goods, without deducting the premium or two per cent.

2. That the warranty was not broken, if the sale to the *French* administration at *Gonaives* was made on condition of being delivered *there;* but if the jury should think that the contract was completed by delivery at *Cape François*, then the warranty was broken.

As to the increase of risk, the Chief Justice did not think it had been proved. The *French* captured all *property*, to whomsoever it belonged, found on a voyage to or from *Hispaniola;* and as to the *English*, they were on terms of friendship with the administration at the *Cape* and *Gonaives*, as appeared by their granting convoy.

3. That an agent was bound to insure: 1. Where the principal had funds in his hands. 2. Where the principal consigned goods to him, and he accepted the bill of lading. 3. Where he had been in the habit of insuring for his principal. That the defendants stood in neither of these predicaments, and therefore were not bound to insure. Under the circumstances of this case, if the defendants had said they would insure to one port in *Hispaniola*, and nothing more, because they had no funds, his honour did not think it ought to be inferred against their express declaration, that they undertook to execute the whole order. But if from the expressions of the defendants, or the circumstances of their conduct, the plaintiff might have been fairly led to conclude that they had undertaken the execution of the order, in such case the jury would be warranted in saying that they did undertake it, and holding them responsible for the damages occasioned by omitting to perform any part of it. In other words they would consider the defendants as

1814.

FRENCH
v.
REED
et al.

standing in the place of insurers, and charge them to the extent of the plaintiff's order of insurance.

No opinion was intimated on the main point, namely whether the defendants did or did not undertake to execute the order. That, which was the turning point of the cause, was left to the jury.

The jury gave the amount of the invoice, 9038 dollars and interest.

The motion for a new trial was argued by *Sergeant* and *Levy* for the defendants, and by *Rawle* and *Ingersoll* for the plaintiff.

TILGHMAN C. J. This is an action for not executing the plaintiff's order, to have an insurance effected, or rather for executing the order differently from the plaintiff's direction. The order was to effect insurance from *Philadelphia* to the island of *St. Domingo*, and *two ports* in the said island. The defendants had an insurance made to *one port* only, and the vessel and cargo were captured on the voyage from the first port where she arrived in safety, to the second. The plaintiff wrote the order at *Reedy Island*, when he was just on the point of sailing for *St. Domingo*, so that there was no time for the defendants to return him an answer. There had been an intimacy and dealings in business between the plaintiff and defendants for some time before this, but at the date of the order for insurance there was a balance of account due to the defendants, nor was there any circumstance existing from which the plaintiff had a right to demand of the defendants to have the insurance effected. There is no doubt therefore, but that the defendants might have refused to execute the order. But instead of refusing, they seemed willing to execute it in part at least, and whether they did not act in such a manner as to make themselves liable for the nonexecution of the *whole*, was the question submitted to the jury. It was one of those questions, which, although to be solved principally from letters which passed between the parties, was yet so interwoven with the defendants' actions, as to render it proper for the Court to submit the whole to the jury, with this direction in point of law, that although the defendants were under no obligation to execute the plaintiff's order, yet if they did undertake it, and excuted it

badly, they were answerable for the consequences (a). The jury could be under no embarrassment with regard to the *law*, but the matter of fact was not without difficulty; and so it appeared on a former occasion, when a jury, after hearing the evidence and arguments of counsel, were discharged by consent, because they could not agree. Insurance is so essential to commerce, and it is so necessary for one merchant to rely on another for executing his orders on that subject, that the law ought not to be relaxed. It is said to be a hard case, and in one sense it is hard. The defendants receive no value for the damages awarded against them. But that is no reason for setting aside the verdict. Nor do I see how with propriety it can be set aside. If the defendants had refused at once to effect the insurance, there would have been an end of the business. But they intermeddled so much, as to render it doubtful how far they would go. It does not appear that if they had refused, there were any other persons who would have taken upon themselves to execute the plaintiff's order, and yet it is possible there might have been; and I do not think myself justified in saying peremptorily, that there would not have been such persons, for the plaintiff had some friends besides the defendants, and after intelligence had been received of the brig's arrival at the *first port*, there would have been no great difficulty in procuring an insurance to the *second*. In fact the defendants were engaged in a negotiation for that purpose, and would have effected it, if they had not been too tardy; but the matter was kept in suspense, until news of the capture arrived. I am sorry for the defendants' loss, for they have brought it upon themselves by their willingness to oblige the plaintiff. But the plaintiff has his rights, of which the Court cannot in justice deprive him. The cause was submitted to the jury upon a point, on which merchants best understand their own modes of doing business. The verdict ought to stand, unless we clearly perceive it to be wrong. This would be going further than I think myself warranted in doing. My opinion therefore is against a new trial.

YEATES J. It cannot be denied, that the verdict in this case operates with peculiar severity on the late firm of *Reed* and

(a) *Vid.* 1 *Marsh.* 298., 4 *Johns.* 84., 5 *D. & E.* 150.

*Forde.* They did not fall within either class of cases, wherein a correspondent is generally bound to make insurance for his principal. They had no funds of the plaintiff in their hands, such was not the usual course of dealing between them, nor had they accepted bills of lading upon a consignment of goods to them. Yet if by the commercial law they have incurred a responsibility under all the circumstances, and the verdict is not contrary to plain evidence, we should not be justified in awarding a new trial.

The law on which the plaintiff relied to support his recovery, has not been questioned by the defendants' counsel. If a party who makes an engagement to perform a business gratuitously, enters upon the execution of the business, and does it amiss through the want of due care, by which damage ensues to the other party, an action will lie for this misfeasance. *Thornbury* v. *Day*, 4 *Johns.* 96. But it has been contended that this legal proposition is not applicable to the facts in this case.

It is certain that the plaintiff wrote to *Reed* and *Forde* from *Reedy Island*, on the 5th of *December* 1804, directing them to make insurance *immediately* upon goods on board the *Hiram* for *Hispaniola*, valued at 20,000 dollars, and cover the premium, out only *to two ports* in *Hispaniola;* and that this letter came to hand. The defendants shewed great anxiety to carry the order of the plaintiff into effect. They wrote to the general agent and attorney in fact of the plaintiff, stating to him their want of funds, offered to raise the premium supposed to be at least 3000 dollars, and informing him they must decline insuring, unless they were made safe. Several arrangements were made for this purpose, but they were rendered abortive. By their letter of the 13th of *December*, they tell the plaintiff that he had forgot to leave a note for the premium payable in three months, and that the *Hiram* would not return in time to put them in funds, and they mention the conditions on which they would make the insurance. Had the defendants adhered to their resolution of not insuring, unless funds were furnished to them for their indemnification, all would have been well. But on the 17th of *December* they effected a policy, wherein 3500 dollars were subscribed by private underwriters on the goods to *Cape François* or *Port de Paix* in *Hispaniola;* and on the 24th of the

same month, another policy of 8000 dollars in the office of the *Union Insurance Company to one port* in *Hispaniola.* These acts did not conform to the orders they had received, which specified that the insurance was to be made on the goods valued at 20,000 *dollars, covering the premium, to two ports in Hispaniola,* without naming either of them. Upon the 27th of *December, Reed* and *Forde* inform *French* of what they had done, and express their hope of having the *remainder* done at *New York* and *Baltimore* at a premium of eleven per cent. In another letter of the 26th of *February* 1805, they say they shall endeavour to insure 10,000 dollars from the *Cape* to *Gonaives,* but probably it could not be done; and again on the 4th of *March,* they mention that the president of one of the insurance companies had demanded a premium of $17\frac{1}{4}$ on that risk and they had offered 15, which they thought he would have taken, if a report of the capture of the *Hiram* had not arrived.

Whether the defendants undertook the effecting of this insurance in pursuance of the plaintiff's orders, was the the point on which the cause turned; and this was fairly submitted by the Chief Justice to the jury, to be decided by them from the language of the defendants' letters, and their whole conduct, without any intimation of his opinion. The question of fact and law was so intimately blended, that I do not feel myself authorized to pronounce that the jurors were mistaken in the inferences which they drew from a lengthy correspondence, and a variety of circumstances disclosed therein. I am of opinion that the rule to shew cause should be discharged.

BRACKENRIDGE J. delivered his opinion *contra;* but a part of it having been mislaid, the reporter is unable to publish it.

Judgment for the plaintiff.