## Commonwealth *v.* Bosurgi, Appellant.

Argued November 27, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

58

*David N. Savitt*, with him *John Patrick Walsh*, for appellant.

*Arlen Specter*, Assistant District Attorney, with him *Charles Jay Bogdanoff* and *Louis F. McCabe*, Assistant District Attorneys, *F. Emmett Fitzpatrick, Jr.*, First Assistant District Attorney, and *James C. Crumlish, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, April 16, 1963:

The first "search and seizure" question to reach this Court since the decision in *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, is presented upon this appeal.

On July 10, 1961,[1] at approximately 10:30 p.m., a burglary occurred at a wholesale jewelry store in Philadelphia in the course of which some watches and jewelry were stolen. The police were notified and they entered upon an investigation of the store and its immediate neighborhood, meanwhile requesting persons in that area to report to detective headquarters any person seen "with watches". On July 11, 1961, about 6:00 p.m., a telephone call from an undisclosed source[2] was received at detective headquarters and referred to De-

---

[1] Three weeks subsequent to the *Mapp* decision.

[2] The record indicates that the caller had not given information to the police in the past, the informant's reliability was assumed and the call was taken "for what it was worth".

tective Kelly, an officer investigating the burglary. The caller informed Detective Kelly that there was a man—described as having bushy grey hair, needing a shave, short in stature, Italian in appearance, and attired in tweed pants and a striped shirt—in a certain taproom, located in the vicinity of the burglarized store, who was "attempting to sell watches" to the taproom customers.

Immediately pursuant to this call, Detective Kelly, with a Detective Sabarro, visited the described taproom but found no one there who answered the description of the person referred to in the telephone call. However, in a nearby taproom, located across the street from the burglarized store, the detectives found a man named Frank Bosurgi who fully answered the description. Bosurgi, seated at a table, was directed to stand up and Detective Kelly "turned the man around", "patted him down from the back", and, when he reached the trousers' pockets, "felt objects there, bulky objects" which felt like watches. From Bosurgi's trousers' pockets Detective Kelly removed ten watches, eight of which were later identified as part of the stock taken from the burglarized store.

While removing the watches from the trousers' pockets, Detective Kelly noticed "particles in there, pieces of bits of glass, little pieces of ringlets, possibly from a bracelet."[3] Bosurgi was immediately taken to police headquarters where he was requested to and did remove his trousers; the trousers were vacuumed and glass particles, similar to those previously obtained, were found therein.

It is an undisputed fact that the detectives had no warrant either to arrest or search the person of Bosurgi.

---

[3] The rear window and plate glass showcase doors in the store had been smashed and glass particles were all over the store floor.

Given a hearing before a magistrate, Bosurgi was held over on charges of burglary, larceny and receiving stolen goods and later was indicted on these charges. Sometime thereafter and prior to trial, Bosurgi's counsel moved to suppress the watches and glass particles as evidence alleging they had been obtained as the result of a search and seizure unlawful under the United States and Pennsylvania Constitutions.

After a hearing in the Court of Quarter Sessions of Philadelphia County before the Honorable BERNARD J. KELLEY, that court granted the motion to suppress the evidence; from that order, the Commonwealth appealed to the Superior Court which reversed the order of the Court of Quarter Sessions.[4] We granted an allocatur.

Two principal questions are raised: (1) the right of the Commonwealth to appeal from the pretrial order suppressing the evidence and (2) the legality of the search of Bosurgi and the seizure of this evidence.

Initially, we determine whether the Commonwealth has the right of appeal from this order. Parenthetically, it may be noted that, without the suppressed evidence, the Commonwealth has no other evidence against Bosurgi and, if the suppression order is upheld, the prosecution of Bosurgi will necessarily terminate.

The position of the federal courts as to the right of the Government to appeal from a pretrial order directing the suppression of evidence obtained, allegedly, as the result of an illegal search and seizure is now clear. Appealability from orders entered on *post-indictment* motions was denied to the Government in *Carroll v. U. S.*, 354 U.S. 394, 77 S. Ct. 1332 and to the defend-

---

[4] This decision (reported in 198 Pa. Superior Ct. 47, 182 A. 2d 295) was by a divided (5-2) court, WATKINS and FLOOD, JJ., dissenting without opinion.

ant in *Cogen v. U. S.*, 278 U.S. 221, 49 S. Ct. 118. Very recently, in *DiBella v. U. S.*, 369 U.S. 121, 82 S. Ct. 654 the Court held that the Government had no right of appeal from a *pre-indictment* order of suppression.[5] However, in our view, the position of the federal courts is not binding upon us. In *Mapp*, supra, the Court stated: "As is always the case, however, state procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions must be respected." (Note 9, p. 659). "The Constitution commands the states to assure fair judgment. Procedural detail for securing fairness it leaves to the states": *Carter v. Illinois*, 329 U.S. 173, 175, 67 S. Ct. 216. The right of appeal in the state judicial system is a matter of procedure the determination of which, both in civil and criminal cases, is peculiarly within the province of the state, not the federal, courts.

We have held, consistently, that the Commonwealth may appeal, in certain areas, from an adverse ruling in a criminal case where the question involved is purely one of law but cannot appeal where the reason for the adverse ruling is an admixture of law and facts: *Commonwealth v. Melton*, 402 Pa. 628, 629, 630, 168 A. 2d 328, and cases therein cited. On the present appeal this requirement is satisfied.

On occasion, the Superior Court has considered, in slightly different posture, the Commonwealth's right of appeal from pretrial orders in criminal cases. In *Commonwealth v. Montanero*, 173 Pa. Superior Ct. 133, 96 A. 2d 178, the court below entered the following order: "Accordingly, the petition to quash the search warrant is granted and *the papers seized thereunder*

---

[5] *DiBella's* rationale would seem to be that the Government is no more prejudiced by a pretrial order suppressing evidence than it is as the result of an adverse ruling on evidence during trial. See also: 156 A.L.R. 1207.

*are suppressed as evidence and ordered returned to the defendant,"* (emphasis supplied) ; the Commonwealth intending to introduce at the trial secondary evidence of the papers' contents and apprehensive that such evidence, in view of the suppression order, might not be received, appealed and the Court held that the order was of such definitive nature as to be appealable. In *Commonwealth v. Rich,* 174 Pa. Superior Ct. 174, 177, 178, 100 A. 2d 144, the Court held ". . . an order requiring officers to *return* seized property terminates the prosecution and is therefore a final judgment, from which the *Commonwealth* may appeal." In *Commonwealth v. Bruno,* 176 Pa. Superior Ct. 115, 117, 106 A. 2d 905, where the court below quashed a search warrant and directed the return of papers and other evidence seized thereunder, the Court, relying on *Rich,* supra, and *Commonwealth v. Loesel,* 155 Pa. Superior Ct. 461, 38 A. 2d 523, refused to quash a Commonwealth appeal, apparently, on the ground that the order requiring the return of the seized property was definitive in nature. Very recently, in *Commonwealth v. Richards,* 198 Pa. Superior Ct. 39, 42, 182 A. 2d 291, President Judge RHODES, speaking for the Court, stated: "Where the order suppressing evidence as having been obtained by illegal search and seizure in effect terminates the prosecution, it is definitive and appealable by the Commonwealth . . . ." The rationale of these decisions is that the Commonwealth should possess the right of an appellate review of the validity of a pretrial order of suppression *where the effect of such order is to terminate the prosecution.*

In the wake of *Mapp* new impetus has been given to the practice of filing by defendants of motions to suppress evidence seized in allegedly illegal searches. In this Commonwealth, such motions, save in exceptional circumstances, are *now required* to be made *in advance*

*of trial.*[6] Under the circumstances, it is imperative that this Court clarify the right of appeal from pretrial orders made in connection with such motions, whether the motions are made pre-indictment or post-indictment or whether the Commonwealth desires to appeal from the grant of a suppression order or the defendant desires to appeal from the denial of a suppression order.

From the point of view of the Commonwealth, two possible situations may arise: (a) the order of suppression will result in a termination and conclusion of the prosecution or (b) while the order of suppression will not result in a termination or conclusion of the prosecution, it will result in a prosecution wherein the Commonwealth is substantially handicapped because it cannot present *all* its available evidence. In the first situation, the element of finality inherent in the order of suppression is apparent and sufficient to render the order appealable. In the second situation, although the element of finality in the order is not so apparent, it is nevertheless present. Without a right of appeal in the Commonwealth in the second situation, the Commonwealth is completely deprived of *any opportunity* to secure an appellate court evaluation of the validity of the order of suppression which forces the Commonwealth to trial without *all* of its evidence. The evidence suppressed may well mark the difference between success and failure in the prosecution; to deny the Commonwealth its only opportunity of securing an appellate review to determine whether the evidence was properly suppressed is highly unfair to the Commonwealth and the interests of society which it represents. In our zeal to protect and preserve for the accused every constitutional right to which he is entitled we

---

[6] Rule 2001 of the Rules of Criminal Procedure (adopted March 7, 1963). See also: Rules 100, 101 of the Rules of the Court of Quarter Sessions of Philadelphia County.

too often forget and neglect to preserve the rights of society which, too, are entitled to consideration. An appellate review of the validity of the order of suppression cannot harm the defendant whereas the denial of the right to such review does harm the Commonwealth. In *both* factual situations the practical effects of an order granting the suppression of evidence give to the order such an attribute of finality as to justify the grant of the right of appeal to the Commonwealth in both situations.

. The right of appeal by a defendant stands upon an entirely different footing. The denial of a defendant's motion for the suppression of evidence does not deprive a defendant of an appellate review of the validity of that order. At trial, the defendant still has full opportunity to object to the introduction into evidence of the allegedly improper evidence and, in the event of his conviction, he will then have an opportunity to secure an appellate evaluation of the propriety and admissibility of such evidence. Therefore, unlike the Commonwealth, an adverse pretrial disposition of a motion to suppress evidence does not deprive the defendant of his only opportunity for appellate review. Under such circumstances, the element of finality, which is the basis of appealability, is lacking in an order denying suppression and the defendant should have no right of appeal from such order.

We next direct our attention to the *validity* of the order which suppressed the production of the watches, and glass particles as evidence.

. As we read *Mapp*, its decisional point is that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court", (p. 655), such rule of exclusion being ". . . an essential part of both the Fourth and Fourteenth Amendments . . . ." (p. 657) The Fourth Amendment protects and preserves "[t]he

right of the people to be secure in their persons, houses, papers and effects, against unreasonable[7] searches and seizures" and, in implementation thereof, *Mapp* prohibits the use *in state courts* for any purpose whatsoever of evidence obtained by *unreasonable* searches and seizures.

In passing upon the "reasonableness" of a search and seizure, a preliminary, and most important, question is whether *Mapp* requires that state courts determine the "reasonableness" of such search and seizure in accordance with federal or state standards. To that question *Mapp* gives no direct answer. However, a study of *Mapp* would indicate that, at least by implication,[8] state courts are still free to apply their own, rather than the federal, criteria of "reasonableness".

The "reasonableness" of a search and seizure must be determined on an ad hoc basis, i.e., on the facts and the circumstances of each particular case. In *U. S. v. Rabinowitz*, 339 U.S. 56, 70 S. Ct. 430, 434, the Court said: "What is a reasonable search [and seizure] is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches

---

[7] Emphasis supplied.

[8] *Mapp* singles out for recognition the action of California in 1955 in its adoption of the exclusionary rule (*People v. Cahan*, 44 Cal. 2d 434, 282 P. 2d 905), yet California, in its application of the exclusion rule, follows its own conception of what constitutes a reasonable search and seizure rather than the substantially different federal standards (*People v. Ruiz*, 196 Cal. App. 2d 695, 16 Cal. Rptr. 855). In *People v. Tyler*, 193 Cal. App. 2d 728, 734, 14 Cal. Rptr. 610, the Court stated: "We find nothing in Mapp v. Ohio . . . to indicate that as a result of that decision the states are bound to follow the federal requirements of reasonable and probable cause instead of their own." In *Commonwealth v. Richards*, supra, p. 42, it was said: "The Mapp decision did not, as we interpret it, preclude judicial determination of what constitutes a reasonable search and seizure under all the circumstances." See: *State v. Smith*, 37 N.J. 481, 181 A. 2d 761, 767.

and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case [citing a case]." See also: *Commonwealth v. Hunsinger,* 89 Pa. Superior Ct. 238, 241, aff'd. 290 Pa. 185, 138 A. 2d 683; *Commonwealth v. Richards,* supra, p. 43.

Under the instant circumstances, did the search of Bosurgi's person and the seizure from his person of the watches and glass particles constitute a reasonable search and seizure?

The Commonwealth makes no claim—nor could it on this record—that the police officers had a warrant to arrest Bosurgi or to search his person. The absence of such a warrant, however, does not per se vitiate the arrest or the search. Under both federal and state authorities, a police officer is authorized to arrest without a warrant where he has reasonable or probable cause to believe that a felony has been committed and that the person to be arrested is the one who committed the felony: *Draper v. U. S.,* 358 U.S. 307, 311, 79 S. Ct. 329, 332; *U. S. v. Rabinowitz,* supra; *Carroll v. U. S.,* 267 U.S. 132, 156, 157, 45 S. Ct. 280, 286; *Russell v. Shuster,* 8 W. & S. 308; *Wakely v. Hart,* 6 Binn. 315; *Commonwealth ex rel. Bandi v. Ashe,* 367 Pa. 234, 80 A. 2d 62, cert. den. 342 U.S. 836, 72 S. Ct. 60; *Commonwealth ex rel. Spencer v. Ashe,* 364 Pa. 442, 71 A. 2d 799, cert. den. 339 U.S. 990, 70 S. Ct. 1015; *Commonwealth ex rel. Miller v. Myers,* 187 Pa. Superior Ct. 565, 146 A. 2d 145.[9]

Although the Fourth Amendment does not prohibit arrests without warrants, it limits and restricts the circumstances under which an arrest without a warrant may be made to offenses committed in the presence of the officers or where the officers have reason-

_____

[9] Cf: Restatement, Torts, §121.

able and probable cause to believe that the person to be arrested has committed or is committing a felony: *Henry v. U. S.,* 361 U.S. 98, 100, 80 S. Ct. 168, 170. "Probable cause" has been said to exist "where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' " an offense has been or is being committed and that the person to be arrested has committed or is committing the offense: *Henry v. U. S.,* supra; *Draper v. U. S.,* supra; *Husty v. U. S.,* 282 U.S. 694, 51 S. Ct. 240; *Carroll v. U. S.,* supra. However, ". . . an arrest with or without a warrant must stand upon firmer ground than mere suspicion . . . though the arresting officer need not have in hand evidence which would suffice to convict . . . .": *Wong Sun v. U. S.,* 371 U.S. 471, 83 S. Ct. 407 (decided January 14, 1963). Judge LEARNED HAND, speaking for the Court, in *U. S. v. Heitner,* 149 F. 2d 105, 106, well stated: "It is well settled that an arrest may be made upon hearsay evidence; and indeed, the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties." See also: *Henry v. U. S.,* supra; *Brinegar v. U. S.,* 338 U.S. 160, 69 S. Ct. 1302; *Jones v. U. S.,* 362 U.S. 257, 80 S. Ct. 725.

"Reasonable" or "probable" cause, difficult as those terms are of exact definition, are exceedingly difficult in their application to the facts and circumstances of a particular case. The recent language of Mr. Justice RUTLEDGE in *Brinegar v. U. S.,* 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, may well act as a guide: "In dealing with probable cause . . .as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of

everyday life on which reasonable and prudent men, not legal technicians, act."

If an arrest, even without a warrant, is lawful, then a search and a seizure incidental thereto are valid: *Wilson v. Schnettler*, 365 U.S. 381, 81 S. Ct. 632; *Draper v. U. S.*, supra; *Harris v. U. S.*, 331 U.S. 145, 67 S. Ct. 1098; *Weeks v. U. S.*, 232 U.S. 382, 34 S. Ct. 341. However, an arrest cannot be used as a pretext to search for evidence (*U. S. v. Lefkowitz*, 285 U.S. 452, 467, 52 S. Ct. 420, 424) nor is a search rendered lawful by what it brings to light (*Henry v. U. S.*, supra; *U. S. v. Di Re*, 332 U.S. 581, 595, 68 S. Ct. 222, 228, 229; *Byars v. U. S.*, 273 U.S. 28, 29, 47 S. Ct. 248).

Was Bosurgi under arrest at the time of the search of his person? Officers are not required to make any formal declaration of arrest or use the word "arrest" (*Commonwealth v. Holmes*, 344 Mass. 524, 526, 183 N.E. 2d 279, 280, 281) nor to apply manual force or exercise "such physical restraint as to be visible to the eye" in order to *arrest* a person. *McAleer v. Good*, 216 Pa. 473, 475, 65 A. 934. An arrest may be accomplished by "any act that indicates an intention to take [a person] into custody and that subjects him to the actual control and will of the person making the arrest:" 5 Am. Jur. 2d, Arrest, §1, p. 695. In the case at bar, Bosurgi was completely in the custody of and under the actual control of the police officers. Moreover, by his actions, Bosurgi submitted to the restraint implicit in an arrest.[10] Thus Bosurgi was under arrest when the search was made.

Taking into consideration all the surrounding circumstances we are of the view that the arrest of Bosurgi, even though without a warrant, was valid and based

---

[10] Such submission to arrest does not equate a consent to be searched. Furthermore, such submission cannot form a basis for a probable cause to arrest: *U. S. v. Di Re*, supra.

on the police officers' "reasonable" and "probable" cause to believe that he had committed the felony of burglary. Viewed practically and from the viewpoint of reasonable men, these police officers knew that a store had been burglarized and that watches were part of the "loot" taken; they went around the neighborhood of the store requesting persons in that area to notify the police at *detective,* not police, headquarters if any person was seen peddling watches; a call was received at detective headquarters, a careful description was given of a man who was in the neighborhood of the burglarized store attempting to sell watches; the police found Bosurgi, answering in every detail the description given of the man attempting to sell watches, in a taproom directly across the street from the burglarized store. Under these and all the attendant circumstances we agree with the majority of the Superior Court that "the officer had probable cause and reasonable grounds to believe that [Bosurgi] had committed the crime and to arrest defendant." (p. 50).

The arrest, in our view, being valid, the officers had not only the right, but the duty, to search Bosurgi. In *U. S. v. Rabinowitz,* supra (p. 432), the Court said: "Yet no one questions the right, without a search warrant, to search the person after a valid arrest. The right to search the person incident to arrest always has been recognized in this country and in England. [citing cases]. Where one had been placed in the custody of the law by valid action of officers, it was not unreasonable to search him." The officers, in the case at bar, ordered Bosurgi to stand, searched him to ascertain if he was armed—not only a proper but a highly necessary protective procedure—and, in the course of so doing, located on his person the watches and glass particles. The language of Judge (later Justice) CARDOZO in *People v. Chiagles,* 237 N.Y. 193, 142 N.E. 583, 584, is apropos: "The peace officer empow-

ered to arrest must be empowered to disarm. If he may disarm, he may search, lest a weapon be concealed. The search being lawful, he retains what he finds, if connected with the crime." In *Charles v. U. S.*, (C.A. 9-1960), 278 F. 2d 386, it was said: "Power over the body of the accused is the essence of his arrest; the two cannot be separated. To say that the police may curtail the liberty of the accused but refrain from impinging upon the sanctity of his pockets except for enumerated reasons is to ignore the custodial duties which devolve upon arresting authorities. Custody must of necessity be asserted initially over whatever the arrested party has in his possession at the time of apprehension. Once the body of the accused is validly subjected to the physical domain of the law, inspections of his person, regardless of purpose cannot be deemed unlawful, . . . unless they violate the dictates of reason either because of their number or their manner of perpetration." See also: *McLester v. U. S.*, 306 F. 2d 880; *Mosco v. U. S.*, 301 F. 2d 180; *Commonwealth v. Stubler*, 84 Pa. Superior Ct. 32.

In our view, the police officers had reasonable grounds and probable cause to believe that Bosurgi had committed this burglary and their subjection of him to custody constituted a valid arrest. The search of his person, incidental to this valid arrest, was entirely proper and the watches and glass particles found in his pockets were not illegally seized within the constitutional prohibition.

We fully agree with the majority of the Superior Court. "The maintenance of a proper balance between the right of the individual to privacy and that of society in the apprehension of crime does not require a suppression of the evidence as obtained by unreasonable search and seizure in this case. Nor does the Mapp decision compel a conclusion that the search and seizure here were unreasonable . . . ."

Order of Superior Court affirmed.

Mr. Justice COHEN filed a dissenting opinion which appears on page 78.