## Commonwealth v. LaPlaca

*Peter A. Levin*, for Commonwealth.

*Nino V. Tinari*, for defendant.

SPAETH, J., June 6, 1972.—

## NATURE OF THE CASE

The case arises on defendant's motions for new trial and in arrest of judgment.

## STATEMENT OF THE CASE

On December 7, 1970, defendant was arrested for possession of dangerous drugs. The circumstances leading to defendant's arrest were as follows.

At about 9:15 a.m. on December 7th, Officer Charles McSorley, of the Narcotics Squad, received a call from a person, who had on previous occasions proved to be a reliable source of information, regarding narcotics violations. The informant said that he wanted to meet the officer that afternoon. At approximately 2:30 p.m., the officer, accompanied by his partner, Officer Bernard Joseph, met the informant. Officer McSorley testified that:

"A. The information I received from my informant was that there would be a 1970 black and brown Cadillac parked on the highway at 7950 Bustleton Avenue, and the driver of the automobile would have a large quantity of white powder on his possession.

"Q. Did he say what time?

"A. There was supposed to be a drop at the time within a half hour.

\* \* \*

"Q. And what were you supposed to look for?

"A. He told me he would have a large quantity of

methedrine, Your Honor, which is a white powder on his possession at the present time and he was dealing from that location.

"Q. Was there a description given to you of that person who would be dealing there?

"A. White male, Your Honor.

"Q. Was that all?

"A. By the name of 'Phil.' "

Officer Joseph testified as follows:

"A. The informant stated that the brown and black Cadillac would be on the corner of Bustleton and Rhawn Street, at which time there would be either one or two white males in the automobile and they were supposed to pick up a young lady, white female, who they were going to sell the methamphetamine to.

"Q. Okay. Now did the informant say how he knew this, how he got this information?

"A. Yes. The informant was present when this transaction first originated.

"Q. Did he say what he meant by that?

"A. He said he was present when the conversation took place between Mr. LaPlaca and the person he was supposed to sell the drugs to.

"THE COURT: The girl?

"THE WITNESS: The girl."

On the basis of this information, the officers proceeded to Bustleton Avenue and Rhawn Street, about a 15-minute drive from where they had met the informant. Officer McSorley stationed himself inside a real estate office; Officer Joseph remained in his parked car. From these vantage points they saw a brown and black Cadillac proceed twice around the block and stop nearby 7950 Bustleton Avenue. The first time the Cadillac went around the block it had two males in the front seat; Officer McSorley recognized neither, but Officer Joseph recognized both, one

as defendant. The second time the Cadillac went around the block, it had, in addition, two females in the back seat, one of whom the officers knew. Officer McSorley testified that after the Cadillac had stopped, he . . . "[w]alked over to the automobile . . . tapped on the side passenger window, identified myself as police, told them to open the window, they were under arrest."

After placing the four persons in the Cadillac under arrest, Officer McSorley saw "Defendant throw this package back to the rear."

In the meantime, Officer Joseph had maneuvered his automobile in front of the Cadillac to prevent it from driving away. Officer Joseph testified: "I then jumped from the vehicle, went to the driver's side of the automobile, at which time when I did arrive there I didn't see who threw it but I did see a bag on the back seat, also, and also heard Mr. LaPlaca hollering to the back to one of the females, 'Put it down your pants, they won't look for it there.'" [1]

Prior to Officer McSorley placing the persons in the Cadillac under arrest, neither officer had observed any unlawful conduct.

After the four persons had gotten out of the Cadillac, Officer McSorley seized the package that defendant had thrown to the back seat. Upon analysis by the police chemical laboratory, the package was found to contain a dangerous drug.

On February 2, 1972, the court heard testimony, which has just been summarized, and argument on defendant's motion to suppress as evidence the package seized by Officer McSorley. The court denied the motion.

---

[1] Officer McSorley did not overhear what defendant said.

Immediately after the denial of the motion, defendant was arraigned. After accepting defendant's waiver of a jury trial, the court received evidence on the merits.[2] The court found defendant guilty as charged.

On February 3rd, defense counsel filed motions for new trial and in arrest of judgment. The only error charged is the court's denial of defendant's motion to suppress. The motions were heard on March 27th, defense counsel submitting a brief in support of the motions. By letter of April 17th, the assistant district attorney advised the court that he would not submit a brief.

## DISCUSSION

It will have been observed from the statement of the case that the evidence was seized after the officers saw defendant throw it to the back seat of the Cadillac. This exposure of the evidence to "plain view," however, was precipitated by Officer McSorley's approach to the Cadillac and his announcement that the occupants were under arrest.

In order to uphold the seizure of evidence in plain view, it is necessary to justify the officer's initial intrusion. Thus, in Coolidge v. New Hampshire, 403 U.S. 443 (1971), the court stated:

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful

---

[2] By stipulation of counsel, the evidence given on the motion to suppress was made part of the trial record.

arrest . . . and permits the warrantless seizure": Id. at page 466.

It might be supposed that the propriety of Officer McSorley's intrusion should be determined by examining the cases that consider when an officer without a warrant may search an automobile. See Commonwealth v. Shaffer et al., 447 Pa. 91, 103-04, 288 A. 2d 727, 734-35 (1972). In fact, however, such an analysis would be inaccurate, for whether or not the officers could have searched the Cadillac without a warrant, they did not; rather, they confined themselves to arresting the occupants and seizing the evidence discovered as a result of the arrest. Thus, the first question presented is whether Officer McSorley had probable cause to arrest the occupants of the Cadillac, including defendant. Defense counsel's contention is that he did not, and that therefore the evidence precipitated into plain view by the arrest was tainted and must be suppressed.[3]

The factors supporting probable cause to arrest defendant included information provided by the informant. Specifically, Officer McSorley was informed of a detailed description of the automobile, the locality of the transaction, the time of the transaction, that

---

[3] Defense counsel has stated in his brief that:

"Judge Spaeth held that McSorley had no probable cause for the arrest" (N.T. 38) . . .

This statement misrepresents the record. Counsel's citation to N.T. 38 refers to counsel's own statement. Further on in the record the court stated:

"I suppose I could reason that the knowledge of one policeman is to be attributed to . . . the other . . .

"But I'd rather not base my ruling on as uncertain a point as that, so that I'm going to assume for the sake of argument that Mr. Tinari's point is well taken that the arrest was not a legal arrest . . ."

a white male named "Phil" and perhaps another white male would be present in the automobile, and that a white female would be present to purchase the dangerous drug.

In determining whether this information was sufficient to establish probable cause to arrest, it is first necessary to determine the reliability of the informant. See Walker v. United States, 327 F.2d 597 (D.C. Cir., 1963); Commonwealth v. Altizer, 213 Pa. Superior Ct. 201, 245 A. 2d 692 (1968), affirmed per curiam, 436 Pa. 611, 260 A. 2d 469 (1970).

In Commonwealth v. Altizer, supra, the court examined "the extent of corroborating circumstances necessary to justify the officer's reliance on the proffered information." There, a police officer was informed by an unnamed person that a man sitting next to him in a particular bar had offered to sell him postal money orders. The informant gave a complete description of the man but refused to identify himself. On the basis of the information, the police officer proceeded to the bar, where he found a man who fitted the description that had been given him. He further observed a packet protruding from the man's pocket; from the shape of the packet, the officer correctly assumed it to be money orders. The officer approached the man, seized the packet and placed the man under arrest: Id. at page 203, 245 A. 2d at page 693.

In upholding the arrest and seizure, the court examined the decision in Commonwealth v. Bosurgi, 411 Pa. 56, 190 A. 2d 304 (1963), cert. denied, 375 U.S. 910 (1963). There, police investigating the theft of watches from a jewelry store received an anonymous telephone call informing them of a man selling watches in a particular taproom near the jewelry store. The informant gave a complete description of the man attempting to sell the watches. The police went to the

taproom, and finding no one fitting the description, proceeded to a taproom across the street. There, they observed a man fitting the description given by the informant. The police searched him and seized 10 watches, eight of which were later identified as belonging to the burglarized store. The court upheld the arrest and seizure and thereby indicated by necessary implication that it was satisfied with the reliability of the informant even though

"[t]he record indicate[d] that the caller had not given information to the police in the past, the informant's reliability was assumed and the call was taken 'for what it was worth' ": Id. at page 58 n.2, 190 A. 2d at page 306 n.2.

In discussing Bosurgi, the court in Altizer noted that "all of the critical elements in Bosurgi are present in the case at bar. In addition, there was here a face-to-face confrontation between the officer and the unidentified source, absent in Bosurgi, at which time the police officer had an opportunity to evaluate the source of the information. Similarly, the information imparted to Officer Kennedy was corroborated not only to the extent that he was able to identify appellee from the description given him, but he was also able to observe personally the money orders which apparently had been the object of the offer of sale. This differs markedly from Bosurgi in that the police there submitted nothing to indicate that they could observe, before the search, any of the watches which they later removed from Bosurgi's person": [Footnote omitted.] Id. at page 210, 245 A. 2d at pages 696-97.

When Altizer and Bosurgi are applied to the present case, it becomes apparent that Officer McSorley was justified in relying upon the information given him by the informant. The informant had in the past provided reliable information regarding narcotics viola-

tions, which was an indication of reliability not present in Altizer and Bosurgi; and when the officer acted upon the information given him by the informant, he was able, as were the officers in Altizer and Bosurgi, to corroborate it by his own observation: the automobile, looking like the automobile described by the informant, did appear at the time and place and with the occupants predicted by the informant.

The next question is whether Officer McSorley had sufficient information within his knowledge to establish probable cause to arrest defendant. The court is persuaded that he did.

In Commonwealth v. Bosurgi, supra, the court examined the law defining "probable cause." Said the court:

" 'Probable cause' has been said to exist 'where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" ' an offense has been or is being committed and that the person to be arrested has committed or is committing the offense: Henry v. U. S., supra [361 U.S. 98 (1959)]; Draper v. U. S., supra [358 U.S. 307 (1959)]; Husty v. U. S., 282 U.S. 694, 51 S. Ct. 240; Carroll v. U. S., supra [267 U.S. 132 (1925)]. However, '. . . an arrest with or without a warrant must stand upon firmer ground than mere suspicion . . . though the arresting officer need not have in hand evidence which would suffice to convict. . . .': Wong Sun v. U. S., 371 U.S. 471, 83 S. Ct. 407 (decided January 14, 1963). Judge Learned Hand . . . in U. S. v. Heitner, 149 F.2d 105, 106, well stated: 'It is well settled that an arrest may be made upon hearsay evidence; and indeed, the "reasonable cause" necessary to support an arrest cannot demand the same strict-

ness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties.' See also: Henry v. U. S., supra; Brinegar v. U. S., 338 U.S. 160, 69 S. Ct. 1302; Jones v. U. S., 362 U.S. 257, 80 S. Ct. 725.

" 'Reasonable' or 'probable' cause, difficult as those terms are of exact definition, are exceedingly difficult in their application to the facts and circumstances of a particular case. The recent language of Mr. Justice Rutledge in Brinegar v. U. S., 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, may well act as a guide: 'In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act' ": Id. at pages 67-8, 190 A. 2d at 310.

In Draper v. United States, 358 U.S. 307 (1959), the court in determining that the information within the officer's knowledge was sufficient to establish probable cause stated:

"The information given to narcotic agent Marsh by 'special employee' Hereford may have been hearsay to Marsh, but coming from one employed for that purpose and whose information had always been found accurate and reliable, it is clear that Marsh would have been derelict in his duties had he not pursued it. And when, in pursuing that information, he saw a man, having the exact physical attributes and wearing the precise clothing and carrying the tan zipper bag that Hereford had described, alight from one of the very trains from the very place stated by Hereford and start to walk at a 'fast' pace toward the station exit, Marsh had personally verified every facet of the information given him by Hereford except whether petitioner . . .

had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, Marsh had 'reasonable grounds' to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true": Id. at pages 312-13.

Here, Officer McSorley had " 'reasonable grounds' to believe that the remaining unverified bit of [his informant's] information—that [LaPlaca] would have the [dangerous drug] with him—was likewise true." In this connection it is of no consequence that the officer observed no illegal activity prior to the arrest. See Draper v. United States, supra; Commonwealth v. Bosurgi, supra; Commonwealth v. Altizer, supra.

With this conclusion, it is seen that the premise of defense counsel's argument fails. Since, contrary to counsel's contention, Officer McSorley's intrusion was warranted, no taint resulted from the fact that the intrusion precipitated the exposure to plain view of the evidence seized. For the sake of completeness of discussion, however, two further questions will be considered. The first of these will be whether Officer Joseph had probable cause to arrest defendant, assuming arguendo that Officer McSorley did not; and the second will be whether in that event the taint arising from Officer McSorley's assumed improper arrest would require suppression of the evidence.

Assuming that Officer McSorley did not have probable cause to arrest defendant, the court is satisfied that Officer Joseph did. It is sufficient to note that Officer Joseph was able to verify a fact in addition to the facts that Officer McSorley was able to verify. The informant had stated that a white male named "Phil" would be present at the described location to make the

sale. Although Officer Joseph did not know that "Phil" was defendant Philip LaPlaca at the time he received this information, when the Cadillac appeared as the informant had predicted, the officer recognized the driver as defendant. When this corroboration of the name of the suspect is considered with the other information personally verified by the officer, it is clear that the officer had probable cause to arrest defendant. See Draper v. United States, supra; Commonwealth v. Gilmore, 447 Pa. 21, 288 A. 2d 757 (1972); Commonwealth v. Bosurgi, supra. Accordingly, he could have conducted a search of the Cadillac and have seized the evidence found in it. (Commonwealth v. Shaffer, supra; cf. Chimel v. California, 395 U.S. 752 (1969)), and was also permitted to seize any evidence in plain view: Coolidge v. New Hampshire, supra.

Given this conclusion, the court is not persuaded that the assumed unlawful conduct requires suppression of the evidence. The better view is to permit Officer Joseph to reap the benefit of his lawful conduct rather than suffer the consequences of unlawful conduct over which he had no control.

This result is consistent with well-reasoned decisional law. In Nardone et al. v. United States, 308 U.S. 338 (1939), the court stated that "facts improperly obtained do not 'become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others. . . .' " [Citing Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920).] Id. at page 341.

In Wong Sun et al. v. United States, 371 U.S. 471 (1963), the court stated:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, grant-

ing establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)": Id. at pages 487-88.

Here, there was no exploitation by Officer Joseph of any illegal police conduct. Independent of the fruits of Officer McSorley's actions, Officer Joseph had probable cause to arrest defendant. Had Officer Joseph been alone he could have lawfully arrested defendant, conducted a valid search, and seized any evidence uncovered by the search or in plain view. The fortuitous intervention by Officer McSorley should not invalidate otherwise lawful police conduct. The interest of defendant sought to be protected by the fourth amendment and the public interest in lawful police conduct would not be served by suppression of the evidence.

## ORDER

And now, June 6, 1972, defendant's motions for new trial and arrest of judgment are denied, and he shall appear for sentencing at a date to be fixed.