**UNITED STATES of America,**
**Plaintiff,**

v.

**Mary Josephine VASQUEZ et al.,**
**Defendants.**

**Crim. No. 7072.**

United States District Court,
C. D. California.

Sept. 22, 1972.

---

imposed by this court on September 13, 1971, following her conviction on several counts charging illegal possession and sales of heroin. The successful prosecution was based almost entirely upon transcripts of telephone communications intercepted by Government law enforcement officers, or upon evidence obtained as a result of such interceptions.

Having appealed the judgment of conviction, the defendant now moves in this court for a new trial on the ground of newly discovered evidence to the effect that the telephone interceptions were not lawfully obtained and that the results thereof were therefore inadmissible. The Court of Appeals has remanded the case in order that this court might have jurisdiction under Rule 33, Federal Rules of Criminal Procedure, to consider and determine such motion.

All of the "newly discovered" facts that are pertinent to the motion for new trial have been supplied by the Government in the form of the affidavits by officials of the Department of Justice. As hereinafter will be made apparent, neither defense counsel nor the Assistant United States Attorney in charge of the prosecution could reasonably be expected to have had prior knowledge of such facts, and the present motion is therefore timely.

On the basis of the current factual showing, and after having considered the memoranda and oral arguments of counsel, the court now concludes that the motion for new trial must be granted.

The authority for wiretaps conducted by Government officials is contained in the Wiretapping and Electronic Surveillance provisions of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2516–2518. Section 2516(1) provides that "The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for . . . ." an order authorizing the desired wiretap. Section 2518(1) requires that each application for such an order include the identity of "the officer au-

William D. Keller, U. S. Atty., Eric A. Nobles, Chief of Crim. Div., Irving Prager, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Burton Marks, Beverly Hills, Cal., for defendants.

## MEMORANDUM AND ORDER ON MOTION FOR NEW TRIAL

WILLIAM P. GRAY, District Judge.

Defendant Mary Vasquez is now in federal custody pursuant to a sentence

thorizing the application"; and section 2518(4)(d) provides that such information shall be specified in the resulting order. We now consider how the performance in this case squared with such requirements.

A letter, bearing the date of August 24, 1970, was directed to Mr. Irving Prager, an Assistant United States Attorney in this District. The letter was signed "Will Wilson, Assistant Attorney General," and it asserted to Mr. Prager that the latter was authorized ". . . under the power specially delegated to me by the Attorney General of the United States, the Honorable John N. Mitchell, pursuant to the powers conferred on him by Section 2516 of Title 18, United States Code, to make application . . ." to a judge of this District for an order authorizing the subject wiretap. In actuality, Mr. Wilson, who at that time was an Assistant Attorney General in charge of the Criminal Division, knew nothing about the matter. His name was affixed to the letter by Mr. Henry E. Petersen, who was a Deputy Assistant Attorney General in the Criminal Division. Mr. Petersen, in his affidavit, states that he signed the letter ". . . in accordance with the authorization of Will Wilson and the standard procedures of the Criminal Division."

Mr. Petersen's action in sending the letter of August 24, 1970, followed his receipt of a memorandum, also dated August 24, 1970, which was directed to Will Wilson "from John N. Mitchell, Attorney General," and contained the latter's initials, affixed by hand. The memorandum referred to the proposed wiretaps here concerned and then stated: "Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to authorize Irving Prager to make the above-described application."

We are now advised, in an affidavit by Sol Lindenbaum, Executive Assistant to the Attorney General, that he, rather than Mr. Mitchell, placed the initials on the memorandum and sent it to the Criminal Division.

It is quite evident, from a considerable number of reported decisions of federal courts across the Country, that on several other occasions Messrs. Petersen and Lindenbaum participated in a manner closely similar to that hereinabove described. See, for example, United States v. Robinson et al., 468 F.2d 189 (5th Cir. 1972); United States v. Pisacano et al., 459 F.2d 259 (2d Cir. 1972); United States v. Aquino, 338 F.Supp. 1080 (E.D.Mich.1972); United States v. Baldassari, 338 F.Supp. 904 (M.D. Penn.1972); United States v. Cihal, 336 F.Supp. 261 (W.D.Penn.1972). The following additional cases have disclosed variations of the above-described practice in the Department of Justice, the common thread being the issuance of an "authorization" letter that did not result from the decision of the "specially designated" Assistant Attorney General whose name it bore, as it purported to do: United States v. Cox, 462 F.2d 1293 (8th Cir. 1972); United States v. Becker, 461 F.2d 230 (2d Cir. 1972); United States v. Chavez, No. 71–406 (N.D.Cal. May 31, 1972); United States v. Cafero, No. 70–445 (E.D.Penn. May 5, 1972); United States v. Consiglio, 342 F.Supp. 556 (D.Conn.1972); United States v. King, 335 F.Supp. 523 (S.D.Cal.1972); United States v. Doolittle, 341 F.Supp. 163 (M.D.Ga.1972); United States v. Focarile, 340 F.Supp. 1033 (D.Md.1972).

In United States v. Robinson, supra, the Court of Appeals for the Fifth Circuit held that the authority bestowed by section 2516(1) upon "The Attorney General, or any Assistant Attorney General specially designated by the Attorney General . . ." must be exercised personally by such officers. The opinion of the court adverted to and rejected the Government's contention that 28 U.S.C. § 510, which contains general authorization for the Attorney General to delegate his functions, should be considered applicable. This court agrees with the *Robinson* decision and with the reasoning

that impelled it, which is clearly set forth in the opinion and need not be repeated here. Accordingly, it is held that the letter of August 24, 1970, that Mr. Petersen sent to Mr. Prager, despite its assertions, did not constitute an authorization to apply for a wiretap order, as is required by section 2516(1).

The Government does not now contend to the contrary, but insists, instead, that it was the Attorney General, himself, who authorized the application for the wiretap. The Government supports its position by relying upon the currently submitted affidavit of Sol Lindenbaum, which recites that on August 24, 1970, the Criminal Division addressed to the Attorney General a request "for approval of authorization to apply for interception orders," and continues as follows:

> "With respect to the request of August 24, 1970, I contacted Attorney General John N. Mitchell telephonically and advised him orally of the substance of a memorandum of recommendation received from the Criminal Division and of a proposed memorandum of approval from him to Will Wilson. The memorandum of recommendation was for approval of a request for authorization to make application for a wire interception order with respect to two telephones in Montebello, California. He orally approved the recommendation of the Criminal

Division, and I thereupon caused his initials to be placed on the memorandum to Will Wilson. The memorandum approved the request for authorization to make application for an interception order and constituted notification to the Criminal Division of the approval." *

The Government asserts that, inasmuch as the Attorney General personally made the authorization, the requirements of section 2516(1) were fulfilled and that participation by Mr. Lindenbaum and Mr. Petersen consisted of only the ministerial function of making the Attorney General's action known to Assistant United States Attorney Prager, in order that he might apply to a judge of this court for the wiretap order.**

I have considerable difficulty with this contention, for two reasons. In the first place, it is by no means clear just what decision Mr. Mitchell announced in the telephone conversation to which Mr. Lindenbaum's affidavit refers. If, in such conversation, the Attorney General actually made the determination to authorize, and did authorize, application for the wiretap and told Mr. Lindenbaum to "pass the word" accordingly, it would have been simple enough for Mr. Lindenbaum to do so, and the requirements of the statute beyond question would have been fulfilled. If, instead, the Attorney General told Mr. Lindenbaum to advise Mr. Wilson that, pursuant to the subject

---

* The memorandum reads:

"This is with regard to your recommendation that authorization be given to Irving Prager, Assistant United States Attorney, Central District of California, to make application for an interception order under 18 U.S.C. 2518, authorizing the Bureau of Narcotics and Dangerous Drugs to intercept wire communications for a twenty (20) day period to and from two telephones subscribed to by Benjamin Ventura and located at 2425 Via Camille, Montebello, California and bearing telephone numbers 213-723-6941 and 213-722-2537, in connection with the investigation into possible violations of 21 U.S.C. 174 and 26 U.S.C. 4704 (a), 4705(a) and 7237(a) and (b) by

Mary Josephine Vasquez and others as yet unknown.

"Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to authorize Irving Prager to make the above-described application."

** On September 23, 1970, there was sent from the Department of Justice an "authorization" to Mr. Prager to seek an order to continue the wiretap, which neither the Attorney General nor an Assistant Attorney General personally issued or authorized. However, the resulting interceptions developed no significant evidence, and therefore the matter of such "authorization" is not further considered here.

statute the latter was "specially designated" to authorize an application for a wiretap order, no such authorization ensued, because it was not Mr. Wilson who carried out the discretionary function thereby delegated to him and which he could not further delegate. United States v. Robinson et al., 468 F.2d 189 (5th Cir. 1972).

Although Mr. Lindenbaum's affidavit is ambiguous as to which of the two above-described courses the Attorney General chose, any reasonable reading of the ensuing memorandum points to the latter (see footnote, p. 535, *supra*). The memorandum tells Mr. Wilson that "Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to authorize Irving Prager to make the above-described application." The memorandum is cast substantially in the precise terms of the statute, and it reasonably can mean only that Mr. Wilson is "specially designated" to consider the merits of the matter and make the discretionary determination that he is empowered by the statute to make when so designated. Certainly, if Mr. Mitchell had made the decision and needed only a messenger or a "corresponding secretary" to communicate it, the wording of the subject memorandum is hardly the vehicle that an intelligent person would prepare and use in order to announce such action. There would be no occasion to have an Assistant Attorney General "specially designated" to carry out such a ministerial function. There must be some presumption that a reasonably understandable memorandum, issued by an official of the Department of Justice, means what it appears to say. Such presumption is not overcome by Mr. Lindenbaum's ambiguous affidavit.

The second reason for my being troubled by the Government's contention, that the Attorney General personally made the "authorization" concerned, involved the question of "when is an authorization not an authorization." I suppose all would agree that if the Attorney General one morning said to himself that he had decided to authorize Mr. Prager to apply for a wiretap order, this, of itself, would not constitute the authorization required by the statute. Do we have substantially more here? Assuming that the Attorney General did make such a decision in his own mind and that he communicated it to Mr. Lindenbaum, the current awareness stopped there. Mr. Petersen had no such knowledge, because in the letter to Mr. Prager of August 24, 1970, he indicates clearly that it is Will Wilson's responsibility to make the decision. He states (on behalf of Will Wilson), "I have reviewed your request and the facts and circumstances detailed therein and have determined that probable cause exists . . . ." He ends the letter by stating that ". . . you are hereby authorized under the powers specially delegated to me by the Attorney General of the United States, the Honorable John N. Mitchell, pursuant to the power conferred on him by Section 2516 of Title 18, United States Code, to make application . . ." for the subject wiretap order.

Mr. Prager certainly was not told that the Attorney General had made the decision here concerned; in his application to this court for the wiretap order, he stated that the officer authorizing such application was Will Wilson, and he appended a copy of the letter of August 24, 1970, to buttress his assertion.

The statute (section 2518) says that the Attorney General ". . . may authorize an application to a Federal judge . . . ." I do not see how there can be an effective "authorization" under such statute if neither the person making the application nor the judge to whom he applies is aware of the existence of that authorization.

This proposition, while acknowledgedly technical, is of more than pedantic significance. As is mentioned earlier in this opinion, section 2516 is part of the Wiretapping and Electronic Surveil-

lance portion of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III, Sec. 802, 82 Stat. 211). The legislative history pertaining to it discloses an attempt by Congress to accomplish a carefully controlled balance between preventing indiscriminate wiretapping, in order to protect the rights of privacy in wire communications, and the need on appropriate occasions to intercept such communications as an important aid to law enforcement. Section 2516(1) was included as a vital part of this balance. Senate Report No. 1097 says, with respect to that provision:

"Paragraph (1) provides that the Attorney General, or any Assistant Attorney General of the Department of Justice specifically designated by him, may authorize an application for an order authorizing the interception of wire or oral communications. This provision centralizes in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques. Centralization will avoid the possibility that divergent practices might develop. Should abuses occur, the lines of responsibility lead to an identifiable person. This provision in itself should go a long way toward guaranteeing that no abuses will happen." 1968 U.S.Code Cong. & Adm. News, page 2185.

The purpose of Congress in establishing identifiable "lines of responsibility" is further articulated in subsections (1) (a) and (4)(d) of section 2518, which require that the identity of the person authorizing the application be included in the application for the interception order and in the resulting order, itself. In the present case, at the instigation of the Department of Justice, both of those documents name Will Wilson as the person authorizing the application. Inasmuch as Will Wilson knew nothing about the matter, any attempt to follow the asserted "lines of responsibility" would lead up a blind alley. It hardly fulfills the expressed intent of Congress to say that the true lines of responsibility may now be traced by means of affidavits submitted almost two years later by the Department of Justice for the purpose of contradicting the documents upon the basis of which the wiretap order was requested and issued.

The foregoing discussion, in the opinion of this court, impels the conclusion that the wiretaps were not legally authorized. A similar conclusion was reached in United States v. Chavez, No. 71–406 (N.D.Cal. May 31, 1972) and United States v. Focarile, 340 F.Supp. 1033 (D.Md.1972). Although mindful and respectful of the contrary opinions expressed in United States v. Pisacano et al., 459 F.2d 259 (2d Cir. 1972), United States v. Cox, 462 F.2d 1293 (8th Cir. 1972), and United States v. Becker, 461 F.2d 230 (2d Cir. 1972), they have not shaken my confidence in the views hereinabove set forth. It follows that the evidence derived from the wiretaps here concerned, upon which the prosecution was almost entirely based, should have been suppressed. Inasmuch as the defendant could not be expected to have had the information upon which to base a timely motion to suppress, she is entitled to have her conviction vacated and her motion for new trial granted. It is ordered accordingly.