**UNITED STATES of America, Plaintiff,**

v.

**Mary Josephine VASQUEZ et al., Defendants.**

**Crim. No. 7072.**

United States District Court, C. D. California.

Oct. 1, 1974.

Supplemental Opinion Jan. 10, 1975.

William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Chief, Crim. Div., Kenneth P. Snoke, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Burton Marks, Beverly Hills, Cal., for defendants.

## MEMORANDUM TO COUNSEL

WILLIAM P. GRAY, District Judge.

Mary Vasquez and others were sentenced by this court on September 13, 1971, following their conviction on several counts charging illegal possession and sales of heroin. The convictions were based almost entirely upon evidence derived through interceptions of telephone communications. These interceptions were undertaken purportedly pursuant to the Wiretapping And Electronic Surveillance provisions of the Omnibus Crime Control And Safe Streets Act of 1968, 18 U.S.C. §§ 2516–18 (1970).

After such convictions this court granted the motion of the defendants for a new trial, based upon a showing that caused this court to believe that the telephone communications had been unlawfully intercepted and that evidence derived therefrom should have been suppressed. The reasons for such action are set out in a memorandum and order dated September 22, 1972, and published at 348 F.Supp. 532.

In accordance with the above-stated conclusion, this court signed and caused to be filed, on November 20, 1972, an order suppressing, at the anticipated new trial, all evidence derived from the subject wiretaps.

On May 13, 1974, the Supreme Court announced its decision in United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), which is highly relevant to the lawfulness of the electronic interceptions here concerned. Accordingly, the Court of Appeals, on June 21, 1974, vacated this court's order suppressing the wiretap evidence and remanded the case "for further consideration in light of United States v. Chavez."

We learn from *Chavez* that if, in this case, the then Attorney General (John Mitchell) *personally authorized* the application for the telephone interceptions, under 18 U.S.C. § 2516(1), such authorization was effective, and if he did not, it was a nullity, because no "specially designated" Assistant Attorney General participated at all. The critical question here is whether or not the Attorney General actually made such authorization. In *Chavez,* both the Supreme Court and the Court of Appeals assumed that he did, based upon an affidavit to that effect by Mr. Mitchell. In the present state of the record in this case, I am not able to conclude that principles of due process and basic fairness justify such an assumption.

In the first place, unlike the situation in *Chavez,* we have no affidavit from Mr. Mitchell. There is an affidavit from Mr. Sol Lindenbaum, who was Executive Assistant to the Attorney General, which is quoted and discussed in my hereinabove mentioned memorandum (348 F.Supp. at 535–36). That affidavit, when considered with the memorandum to Will Wilson to which it refers, is by no means clear as to whether the Attorney General was exercising his *own discretion* in the matter of seeking a wiretap authorization or was *"specially designating"* Will Wilson to make such a discretionary decision. If the contemporaneously issued memorandum to Will Wilson meant what it said, the latter alternative was adopted. The resulting letter, purportedly signed by Will Wilson, states clearly that *it was he* who was making the authorization after having been given such authority through special designation by the Attorney General.

The Government now seeks to repudiate these official documents of the Department of Justice, and it insists that the Lindenbaum affidavit establishes that the true facts are contrary to those documents. I do not see how this court can accept, or require the defendants to accept, such a contention on the basis of the record as it now stands. It still seems to me, as stated in my earlier memorandum, that there must be ". . . some presumption that a reasonably understandable memorandum, issued by an official of the Department of Justice, means what it appears to say. Such presumption is not overcome by Mr. Lindenbaum's ambiguous affidavit." (348 F.Supp. at 536.)

■ The processing of wiretap applications in the Department of Justice for a period of years has resulted in many challenges of the nature here concerned. The reported cases disclose that in some instances Mr. Lindenbaum submitted the matter to Mr. Mitchell for decision and in some he did not, affixing the Attorney General's initials to memoranda of authorization in the latter instances according to what he believed the Attorney General would approve. The Supreme Court decision in *Chavez* has established that the former method of handling was legal and the latter invalid. The defendant's attorney asserts that he would like to cross-examine Mr. Lindenbaum as to *how he now is able to recall* that, of the many cases that he processed both ways, this one falls into the former category. Under all of the circumstances, it seems to me that counsel for the defendants should have that opportunity.

Also, for reasons hereinabove set forth, defense counsel should be entitled to cross-examine Mr. Lindenbaum with respect to *just what Mr. Mitchell did authorize,* and how such authorization squares with the documentation that stemmed therefrom.

The Government is invited, if so disposed, to arrange for Mr. Lindenbaum to appear in this court in order that further consideration may be given to the matters here concerned, along the lines discussed above. Such appearance may be scheduled for such time prior to the end of 1974 as Mr. Lindenbaum's convenience and that of counsel and the calendar of the court will permit.

In the absence of a clear showing, from the testimony of Mr. Lindenbaum, that Attorney General Mitchell personal-

ly authorized the application for the wiretap, this court will remain of the view that no authoritative authorization was made in this case, and the evidence derived therefrom will be suppressed, for the reasons previously set forth by this court and confirmed in the opinions of the Supreme Court and the Court of Appeals in *Chavez*.

## SUPPLEMENTAL OPINION

Attention is invited to my Memorandum to Counsel, dated and filed October 1, 1974, which, for reasons therein set forth, invited the Government to arrange for Mr. Sol Lindenbaum to appear in court and testify in support of his earlier submitted affidavit. Mr. Lindenbaum did appear on December 16, 1974.

He testified that, during the period between February 1969 and until after August 24, 1970 (the time here concerned), when the Criminal Division of the Department of Justice concluded that a telephone interception should be authorized in connection with a criminal investigation, it would submit to the Attorney General's office a memorandum asserting the reasons for such conclusion. It would also prepare and append all of the documents necessary to implement an affirmative response by the Attorney General, including, in particular, a proposed memorandum of authorization from the Attorney General to Will Wilson, Assistant Attorney General in charge of the Criminal Division. These materials regularly came to Mr. Lindenbaum's desk, and there were three separate ways in which the approval of the Attorney General was accomplished:

1. When the Attorney General, Mr. Mitchell, was available at his office in Washington, Mr. Lindenbaum would personally submit the file to him and Mr. Mitchell would indicate his approval by writing his initials upon the previously prepared memorandum of authorization to Mr. Wilson;

2. When the Attorney General was absent from his office but was available to Mr. Lindenbaum by telephone, the latter would use that means to advise Mr. Mitchell concerning the desired wiretap. If Mr. Mitchell indicated his approval of the request, Mr. Lindenbaum would cause one of the Attorney General's secretaries to write Mr. Mitchell's initials on the memorandum of authorization to Mr. Wilson;

3. Mr. Mitchell knew that Mr. Lindenbaum was familiar with Mr. Mitchell's policies concerning the circumstances under which he would give authority to request a telephone interception, and, beginning in April 1970, he gave Mr. Lindenbaum general authority to act on his behalf in such matters. Accordingly, when the Attorney General was out of the Country or otherwise was not available by telephone, Mr. Lindenbaum, when he considered that approval was indicated, acted under such authority by causing one of Mr. Mitchell's secretaries to affix Mr. Mitchell's initials to the memorandum of authorization to Mr. Wilson.

As my memorandum of October 1, 1974 points out, we now know that procedures No. 1 and No. 2 were lawful and effective, and that any purported action under No. 3 was a nullity. Mr. Lindenbaum testified that he recognized that the initials on the memorandum of authorization here concerned were in the handwriting of Mr. Mitchell's secretary, and that, although he has no recollection of the transaction, he believes that the procedure under method No. 2 was used, rather than No. 3. In support of such conclusion, he submitted the following factual assumptions and analyses:

(a) During the period here concerned, Mr. Mitchell's secretary kept a date book, or log, in which she noted the activities, whether actual or anticipated, of the Attorney General, wherever he might be. When he was away, she would add items to the log as she received further information from Mr. Mitchell or other members of his staff. For purposes of his testimony in this matter,

Mr. Lindenbaum caused to be transcribed from such log the following:

1970

Thursday, August 20

7:45 A.M.—left home for Andrews. Destination: Puerto Vallarta, Mexico.

Friday, August 21

Free morning.

12:35—luncheon

2:10—left for airport. Destination: California

4:30 P.M.—Arrived California. By car to Newporter Inn, Newport Beach.

Saturday, August 22

2:40 P.M.—depart for Portland, Oregon.

4:30 P.M.—arrived in Portland

Reception and dinner

10:00 P.M.—Departed Portland

11:50 P.M.—Arrived in California

No notations until—

Thursday, August 27

10:00 A.M.—meeting at Western White House

Friday, August 28

9:00 A.M.—meeting at Western White House

(b) The request for the subject authorization was received in the office of the Attorney General on Friday, August 21, 1970 (as a date stamp shows), but it was not approved until the following Monday, August 24. This indicates to Mr. Lindenbaum that he must have determined on Friday to hold the matter until Monday and seek telephone authorization from Mr. Mitchell; otherwise he would have acted upon it on the day of its arrival;

(c) The fact that there were no notations on the log between 11:50 p. m. Saturday, August 22, and the following Thursday indicates to Mr. Lindenbaum that Mr. Mitchell was in Southern California and was reachable by telephone on Monday, August 24, because if it were otherwise the log would have so noted;

(d) Inasmuch as Mr. Mitchell must have been available on Monday, in light of the foregoing analysis, Mr. Lindenbaum must have telephoned him and obtained approval to send the requested memorandum of authorization to Mr. Wilson. Mr. Lindenbaum does recall that he did talk with Mr. Mitchell by telephone during the latter's trip to California in August 1970 on perhaps more than one occasion, although he cannot state precisely when or identify any of the subjects discussed; and, as pointed out above, he has no independent recollection with respect to the processing of the matter here concerned.

■ This court, while much impressed with Mr. Lindenbaum's apparent integrity and candor, is simply unable to accept the above rationalization as establishing that the personal approval of Mr. Mitchell was accomplished in the matter here concerned. Such rationalization includes the assumptions that Mr. Mitchell was in California on August 24; that he was reachable by telephone; and that Mr. Lindenbaum did talk to him and obtain the required authorization. And yet, none of these assumptions are based upon anything more than surmise. With comparable certainty, we could also surmise that Mr. Mitchell may have been deep sea fishing out beyond San Clemente Island, or on a golf course, or conferring with the President, or in some other situation where lack of telephone facilities or the exercise of appropriate discretion would cause him to be considered temporarily out of circulation.

Mr. Lindenbaum stated that on occasions of temporary unavailability of the Attorney General, it was his practice to keep trying until he reached him. However, he also acknowledged that there were occasions when he exercised his delegated authority to approve wiretap requests even though the Attorney General was within the United States.

■ As was discussed in my memorandum of September 22, 1972 (see 348 F.Supp. at 537), a purpose of Congress in requiring that an application for a telephone interception be personally authorized by the Attorney General or a specially designated Assistant Attorney General was to establish lines of responsibility that would lead to an identifiable person. In this case, the documents submitted by the Government that

prompted a judge of this court to authorize the interception stated that the request stemmed from Assistant Attorney General Wilson. This simply was not so, as we learned almost two years later. And now, the only showing that we have to buttress the Government's current contention, that the Attorney General, himself, authorized the application, amounts, in effect, to the suggestion that he probably could have been reached and asked to do so, and therefore that he probably was so asked and assented. One looks in vain for lines of responsibility leading to an identifiable person under these circumstances.

This court finds that the Government has failed to establish that the application for the wiretap was personally authorized either by the Attorney General or an Assistant Attorney General, and that the evidence derived therefrom must be deemed to have been illegally obtained. United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974).

Accordingly, the order of this court, dated November 20, 1972, requiring that such evidence at the anticipated new trial be suppressed, is hereby reaffirmed.