UNITED STATES of America, Plaintiff,

v.

Harmon Northrop SWANSON et al., Defendants.

Crim. No. R–74–79 BRT.

United States District Court, D. Nevada.

July 15, 1975.

Lawrence J. Semenza, U. S. Atty, Reno, Nev. and Frank Kear, Sp. Atty., U. S. Dept. of Justice, Los Angeles, Cal., for plaintiff.

Oscar B. Goodman, Goodman & Snyder, Las Vegas, Nev., for Harmon Northrup Swanson.

Richard J. Legarza, Reno, Nev., for Charles Eugene Travella.

Willard Van Hazel, U. S. Public Defender, Reno, Nev., for James Donald Wiley.

LeRoy Arrascada, Reno, Nev., for Lawrence Elwood Werry.

Mark L. Tuft, James Brosnahan, Jr., Cooper, White & Cooper, San Francisco, Cal., for Lewis Alfred Marsten, Jr.

## ORDER GRANTING MOTIONS TO SUPPRESS

THOMPSON, District Judge.

The defendants have moved to suppress evidence acquired by electronic surveillance pursuant to authorization orders entered by Judge Roger D. Foley in December 1971.

■ The authorizations for the wiretaps were obtained at a time and under circumstances which have spawned much litigation under the regime of John N. Mitchell as Attorney General of the United States. The initial application for authorization on December 15, 1971 recited that the Attorney General had specially designated Acting Assistant Attorney General Henry E. Peterson to authorize the application and that Peterson, in turn, had authorized it, his letter of authorization being attached to the application.

Similarly, the application presented to Judge Foley on December 30, 1971 for an order authorizing continuance of the interception of wire communications recited that the Attorney General had specially designated Acting Assistant Attorney General Henry E. Peterson to authorize the application and his letter of authorization was attached.

Section 2516, Title 18, United States Code, permits "The Attorney General, or any Assistant Attorney General specially designated by the Attorney General" to authorize the application. An Assistant Attorney General is an officer of the United States appointed by the President by and with the advice and consent of the Senate. 28 U.S.C. § 506.

*United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), makes it clear that the authority to initiate a wiretap authorization is strictly limited to the officers named in the statute. "The mature judgment of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order" (*Giordano*, pp. 515–516, 94 S.Ct. p. 1827). Until an Assistant Attorney General designate has been confirmed by the Senate, he does not qualify.

The Government, nevertheless, argues that the wiretaps in question were, in fact, authorized by the Attorney General himself and seeks to draw the case under the cloak of *United States v. Chavez*, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), in which the Supreme Court held that when the Attorney General has in fact authorized the application to be made but the application and the court order incorrectly identify an Assistant Attorney General as the authorizing official, the statute does not mandate suppression of the evidence obtained.

We note, however, that this case differs from both *Giordano* and *Chavez* where the application and court order identified as an authorizing official a person who was by statute designated to authorize the application. An Acting Assistant Attorney General does not have that capacity. Until his appointment has been confirmed and he has assumed the office of Assistant Attorney General, he has not been qualified by law as a responsible Department of Justice official with mature judgment.

The statute (18 U.S.C. § 2518(10)(a)(ii)) requires suppression if "the order of authorization or approval under which it was intercepted is insufficient on its face." That is this case.

An evidentiary hearing with respect to the motions to suppress was held on June 16, 1975. The exact occurrences with respect to the December 1971 wiretap authorizations have been befogged by lapse of time. They may be reconstructed if the Government's version of the events is to be believed.

Unsigned drafts of proposed affidavits of John A. Norris, Special Agent, Federal Bureau of Investigation, Reno, Nevada, were received by the Special Operations Unit, Organized Crime and Racketeering Section, Department of Justice, Washington, D. C., on December 7, 1971 from James E. Ritchie, Department of Justice attorney in charge of the San Francisco Strike Force office. The documentation for the application reached Mr. Sol Lindenbaum, Executive Assistant to the Attorney General. On December 15, 1971, Attorney General John N. Mitchell initialed a memorandum specially designating Mr. Peterson "to exercise those powers" (under 18 U.S.C. § 2518) for the purpose of authorizing James E. Ritchie to make the above described application. Both Mr. Lindenbaum and Mr. Mitchell have, by affidavit, averred the authenticity of Mr. Mitchell's initials. Neither has a memory of the specific transaction. The memorandum does not expressly or by implication state that Mr. Mitchell approved the wiretap. Neither Mitchell nor Lindenbaum testified at the hearing. The memorandum was followed by Mr. Peterson's purported letter of authorization which was acted upon by Judge Foley.

The application for an extension followed a somewhat similar course. Mr. Mitchell was in Phoenix, Arizona. Mr. Lindenbaum communicated with him by telephone and Mr. Mitchell authorized Lindenbaum to place Mitchell's initials on a similar memorandum of Peterson. This was done and a Peterson authorization letter was prepared, but Peterson did not personally sign it. He was in the Caribbean and a Deputy, Mr. Shapiro, signed the letter for him, presumably after telephonic communication, although neither Mr. Shapiro nor Mr. Peterson testified.

With the exception of the special designation of an unauthorized person (Peterson) to exercise the statutory

powers to approve a wiretap, I do not fault the procedures followed. A busy public official cannot be in his office one hundred per cent of the time. Communication by telephone is frequently necessary. The oral authorization of a Deputy as an amanuensis of initial or sign a communication on behalf of the principal is essential in the conduct of modern transactions in business and public affairs. There is a serious question, however, with respect to whether Mr. Mitchell did personally approve the wiretap authorization. Did he exercise his own judgment on the merits or did he delegate that responsibility to Peterson? No one remembers. The record, that is, the two memoranda to Peterson persuade me that it was the intention that Mr. Peterson should exercise his own judgment. Else why specially designate anyone? The Attorney General himself might just as easily have signed the approval letter or authorized someone to sign it for him. Cf. *United States v. Vasquez*, D.C., 348 F.Supp. 532; D.C., 387 F.Supp. 83.

■ With respect to defendants Travella and Marsten, there is an additional problem. The statute (18 U.S.C. § 2518(8)(d)) requires an inventory to be served within ninety days upon "such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice." The reason and importance for this requirement have been fully explicated in *United States v. Chun*, 503 F.2d 533 (9th Cir. 1974). Both Travella and Marsten were identified in January 1972 as participants to the intercepted communications. An inventory order was entered by Judge Foley on April 10, 1972. The identity of neither was disclosed to him. Yet, on January 17, 1972, a search warrant had been obtained, based on the interceptions, to search Travella's home, and on July 23, 1974, Marsten was summoned as a witness before a District of Nevada Grand Jury. A Supplemental Inventory Order for service of an inventory on Travella and

Marsten was not obtained until October 25, 1974. Under the principles enunciated in the *Chun* case, these two defendants are entitled to suppression for violation of the inventory requirements of the statute.

■ All defendants also complain of the insufficiency of the applications for wiretaps presented to Judge Foley. The statute (18 U.S.C. § 2518(1)(e)) requires:

"Each application shall include the following information:

" * * *

"(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application * * *."

The application presented to Judge Foley on December 15, 1971 averred:

"By Court Order dated June 2, 1971, the Honorable Thomas J. MacBride, Chief Judge, United States District Court, Eastern District of California, authorized the interception of wire communications for a maximum period of twenty (20) days from telephone numbers 916–481–8964 and 916–481–8967, both subscribed to in the name of Curt R. Curry and both located at the Hacienda Apartments, Apartment No. 50, 2668 Cottage Way, Sacramento, California; and telephone number 916–383–8200, subscribed to in the name of Florin Auto Wreckers and located at 7006 McComber Drive, Sacramento, California.

"By Court Order dated June 25, 1971, Judge MacBride authorized the interception of wire communications for a maximum period of fifteen (15) days from telephone number 916–925–6123, subscribed to in the name

of Don Kiernan and located at 2360 Evergreen, Apartment 3, Sacramento, California.

"Other than the applications for Judge MacBride's Orders of June 2 and June 25, 1971 no other application is known to have been made to any judge for authorization to intercept, or for approval of interception, of wire communications involving any of the persons, places or facilities mentioned herein."

The foregoing statements stand apart from all other allegations in the application. It cannot be determined from them what, if anything, they have to do with a requested authorization to tap telephones used by Harmon Northrop Swanson, Larry Werry and James Donald Wiley, the named subjects of the requested order. The obvious purpose of the statute is to preclude successive wiretaps and oppressive intrusions into the privacy of the same persons. The authorizing judge must be fully informed regarding the purposes of the earlier wiretaps and the results thereof and why they involved the same persons named in the instant application. Else his discretion to avoid oppressive intrusions cannot be exercised. The allegations of paragraph 6, *supra,* of the application are insufficient to satisfy the statutory admonition.

■ This is not to imply that a wiretap application must be judged by its four corners. The statute (18 U.S.C. § 2518(2)) states: "The judge may require the applicant to furnish additional testimony or documentary evidence in support of the application." But in this case, because of lapse of time, none of the witnesses at the hearing who appeared before Judge Foley could remember whether anyone was sworn to give additional testimony or whether any elaboration in any form of the allegations of the applications was requested or given.

Finally, during the course of the hearing on the motion to suppress, a situation developed which has led to a further contention in support of the motions, i. e., that the affidavit in support of the application was materially and deliberately falsified. The affidavit referred to two different confidential informants who had independently given information to investigating agents which implicated Swanson, Wiley and Werry in illegal interstate gambling activity. Mr. Frank E. Kear, Special Attorney for the Department of Justice, received a report from an investigating agent that there was, in fact, only one confidential informant. Mr. Kear promptly informed the Court and counsel for the defendants.

On Monday, June 16, 1975, Mr. John R. Barron, Special Agent, Federal Bureau of Investigation, Sacramento, California, testified that he had searched the FBI files and that there was, in fact only one confidential informant and that he had informed Agent John Norris in Reno about only one informant. It was his best recollection that it was the suggestion of Mr. James E. Ritchie, the attorney in charge of the investigation, that the information coming from the one informant be separated and reported as emanating from two different sources as a ploy to protect the identity of the confidential informant.

On Tuesday morning, Mr. James E. Ritchie testified that he specifically remembered that there were, in fact, two different informants in Sacramento. His information regarding the disclosures made by each of the different informants came from Special Agents Barron, Adams and Newton.

Later, Special Agent John R. Barron was recalled as a witness. He stated that on Friday, June 13, 1975, in preparation for the hearing, he had instructed Special Agent Adams to search the FBI files. Adams, with Agent Eliason, did so and reported to Barron that it appeared that there was in fact only one informant, and he had so informed Mr. Kear. But after Mr. Kear told him about Mr. Ritchie's positive recollection, he now had a refreshed memory to the effect that there were actually two

separate informants. Mr. Barron testified that he personally knew only Informant No. 1. The agents had located a file for another confidential informant but there was nothing in the file to show that this second source had, in fact, contributed any of the information attributed to Confidential Informant No. 2 in the affidavit of probable cause presented to Judge Foley on December 15, 1971.

■ A statement in an affidavit of probable cause that there are two separate and independent confidential sources of incriminating information when there is, in fact, only one is a material misrepresentation. If a government agent or several government agents working together produce an affidavit to support an arrest or search warrant or an application for an order authorizing electronic surveillance, which recklessly or intentionally makes a misrepresentation of the material facts supporting probable cause, the evidence obtained should be suppressed. *United States v. Carmichael,* 489 F.2d 983 (7th Cir. 1973); *United States v. Damitz,* 495 F.2d 50, 53, note 2 (9th Cir. 1974).

■ The present record does not permit an intelligent resolution of the issue. Memories have become dimmed by lapse of time, but the Court does not doubt that each witness attempted to testify truthfully to the best of his recollection. At the hearing, I expressed the opinion that the issue could not be satisfactorily resolved unless the Government should disclose the identities of the presumably two confidential informants. The Government has refused to do so. I am still of the same opinion. The Government's disclosure of the possibility that there was a single confidential informant has created a serious doubt concerning the veracity of the affidavit. The Government has control of all the evidence bearing on the question. It has the burden of proof. Cf. *Alderman v. United States,* 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1968). The inconclusive showing made requires suppression of the evidence of overheard conversations.

Nothing said in this order is intended as a criticism of Mr. Frank E. Kear, Special Attorney, Department of Justice, who has been in command of the case since some time before the indictment was returned, but had nothing to do with it in the earlier stages of the investigation. He had conducted himself before this Court in a highly capable and professional manner and with clear understanding of the responsibilities of a government attorney, as a member of the legal profession and as an officer of the Department of Justice of the United States of America.