Commonwealth *v*. Kaschik, Appellant.

Submitted April 14, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*August J. Costanzo,* for appellant.

*Robert F. Hawk,* First Assistant District Attorney, and *John H. Brydon,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., September 22, 1975:

This appeal challenges the validity of a search warrant used by the police and the scope of their subsequent

search pursuant to the warrant. Not only do we find that the warrant was valid, but we also agree with the Commonwealth that the police did not exceed the boundaries of their search. Accordingly, we affirm the judgment of sentence.

Testimony given at the suppression hearing related the following facts: In March, 1972, the residence of a Glen Jefferies was searched by Trooper Bard and Trooper Schneider of the Pennsylvania State Police. A tool box which was recognized as being stolen from an establishment known as McDonald Motors was discovered. As a result of this, Mr. Jefferies informed the troopers that he had obtained the tool box from a Raymond Bester. Trooper Bard contacted Mr. Bester who stated that he had purchased the tool box from a Lee Schweinsberg along with some other tools which were produced and recognized by the trooper as stolen property. Trooper Bard was informed by Mr. Bester that Lee Schweinsberg had told him that he had additional tools at the Wimer Auto Body Shop where Schweinsberg was supposed to be working. Mr. Bester was later placed under arrest. On March 28, 1972, Trooper Bard applied for a search warrant for the Wimer Auto Body Shop. A description of several different types of tools was given as the property to be seized. The written affidavit on the warrant alleging probable cause for the search was as follows: "According to information received from Raymond Eugene Bester, who claimed he purchased tools from Lee Edward Schwein[s]berg, also claimed that the said Lee Edward Schwein[s]berg had delivered the above described tools and property to The Wimer Auto-body and Car Sales sometime during the week of March 19, 1972." Based on the above affidavit and other oral testimony given to the magistrate, the search warrant was issued that same day.

Trooper Bard and another state trooper proceeded to the body shop. When they arrived no one was there so they entered through an unlocked door. Inside the shop several

tools were discovered that had been allegedly stolen from McDonald Motors. Trooper Bard also noticed three automobiles inside the shop, one of which had many of its parts removed, and decided to write down their serial numbers. After returning to the barracks with the confiscated tools, Trooper Bard ran a N.C.I.C. (National Crime Information Center) check on the serial numbers of the vehicles and learned that one of them, a green Ford Mustang, had been reported by Pittsburgh Police as stolen. The next day, March 29, 1972, another search warrant was obtained and the stolen vehicle was recovered.

The testimony at trial revealed that when Trooper Bard returned to the Wimer Auto Body Shop on March 29, 1972, to seize the stolen vehicle, he observed a wrecked 1970 Ford Maverick parked in front of the lot. Upon closer examination of the vehicle, Trooper Bard noticed that there was no manufacturer's serial number on either the dashboard or the door post. Appellant allegedly admitted ownership of the vehicle at that time.

Appellant, the owner of the Wimer Auto Body Shop, was charged with burglary,[1] larceny,[2] and receiving stolen property[3] with respect to the stolen tools, receiving stolen property[4] with respect to the stolen vehicle, and possession of a vehicle with a defaced number[5] with respect to the 1970 Ford Maverick. After a trial by jury, appellant was found guilty of two counts of receiving stolen property with respect to the stolen tools and the stolen vehicle and possession of a vehicle with a defaced number. Following the denial of post-trial motions and the imposition of sentence, this appeal was taken.

---

1. Act of June 24, 1939, P.L. 872, §901, 18 P.S. §4901.

2. Act of June 24, 1939, P.L. 872, §807, 18 P.S. §4807.

3. Act of June 24, 1939, P.L. 872, §817, *as amended*, 18 P.S. §4817.

4. *See* n.3, supra.

5. Act of April 29, 1959, P.L. 58, §301, 75 P.S. §301.

Appellant first claims that the suppression hearing court erred in permitting the Commonwealth to introduce testimony of oral information given by Trooper Bard to the magistrate to supplement the written affidavit for the search warrant. It must be remembered that the search warrant in this case was issued on March 28, 1972. At that time the sworn oral testimony by the affiant for the search warrant was allowed to supplement the written affidavit. *Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973); *Commonwealth v. Crawley,* 209 Pa. Superior Ct. 70, 223 A.2d 885 (1966), *aff'd,* 432 Pa. 627, 247 A.2d 226 (1968). Although Pa.R.Crim.P. 2003(a) now prohibits an issuing authority from considering evidence outside the written affidavit, that rule was not effective at the time the warrant in the present case was issued.

Appellant's next argument is that probable cause was not established to support the March 28 search warrant. This argument specifically questions the reliability of the information received by the affiant, Trooper Bard, and used by him to obtain the search warrant.

The United States Supreme Court has set forth the following test to determine whether information received by an affiant from an informant is sufficiently reliable to base probable cause upon: First, "the magistrate must be informed of ... some of the underlying circumstances from which the officer concluded that the informant ... was 'credible' or his information 'reliable.' " *Aguilar v. Texas,* 378 U.S. 108, 114 (1964). Second, the magistrate must be informed by the affiant as to the underlying circumstances which caused the informant to believe that crime was being committed or contraband was being concealed in a certain location. *Id.* The *Aguilar* test has consistently been followed by the courts in this Commonwealth. *Commonwealth v. Strohl,* 458 Pa. 64, 326 A.2d 314 (1974); *Commonwealth v. MacKay,* 229 Pa. Superior Ct. 56, 324 A.2d 574 (1974); *Commonwealth v.*

*McKeever,* 229 Pa. Superior Ct. 35, 323 A.2d 44 (1974) ; *Commonwealth v. Tasco,* 227 Pa. Superior Ct. 144, 323 A.2d 831 (1974) ; *Commonwealth v. Falk,* 221 Pa. Superior Ct. 43, 290 A.2d 125 (1972). In *Falk,* this Court listed four factors which should be considered in determining whether a "substantial basis" exists for crediting hearsay information received from an informant: "(1) accurate information previously given by the informant, (2) corroboration of the informant's story by other sources, (3), personal and recent observations of the informant which amount to a declaration against interest, and (4) the reputation of the defendant with the police if supported by prior events within the affiant's own knowledge." *Id.* at 47, 290 A.2d at 126-27.

In the instant case, neither the search warrant itself nor testimony at the suppression hearing revealed that either Raymond Bester or Lee Schweinsberg had ever given any prior information to the police. However, the lack of prior informing is not crucial in the determination of reliability. *Commonwealth v. Bove,* 221 Pa. Superior Ct. 345, 293 A.2d 67 (1972). Nor was there any evidence that the affiant had any knowledge of the reputation of Bester or Schweinsberg to satisfy the fourth factor. However, we believe that the magistrate was justified in relying on the hearsay statements of Bester and Schweinsberg because they amounted to declarations against interest and the statements were also corroborated by other evidence. Although the affidavit for the search warrant does not disclose the facts surrounding the statements given to the affiant, these circumstances were developed at the suppression hearing and were properly admitted by the court below to rehabilitate the search warrant's written affidavit. Trooper Bard testified that when he confronted Raymond Bester with the stolen tool box, Bester admitted that he had purchased the box from a Lee Schweinsberg. Bester then also produced other tools that he had received from Schweinsberg. They were rec-

ognized by Trooper Bard as being stolen from a local service station. Surely the statements made by Bester incriminated himself and his production of the other stolen property corroborated such statements. Bester's next statement that Schweinsberg had told him that other tools were at the Wimer Auto Body Shop similarly tended to incriminate him. *See Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971)·; *Commonwealth v Jones*, 229 Pa. Superior Ct. 224, 323 A.2d 879 (1974).

Appellant further argues that the statements of Schweinsberg given to Bester and then relayed to· Trooper Bard by Bester constituted hearsay-on-hearsay, and as such were inherently unreliable. "It is not unusual for an affidavit of a law enforcement officer to contain hearsay information from an informant, which, in turn, is based on other information gathered by that informant. . . . Therefore, when a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information. Rather, he is called upon to evaluate this · information as well as all other information in the affidavit in order to determine whether it can be reasonably inferred 'that the informant had gained his information in a reliable way.' " *United States v. Smith*, 462 F.2d 456, 459 (8th Cir. 1972) (citations omitted.) We believe that the magistrate was justified in crediting the statements of Bester as to what Schweinsberg had told him. Again we recognize that these statements were against the interest of both Bester and Schweinsberg and corroborated by the physical evidence of the stolen property. Thus, each level of hearsay received by the magistrate satisfied the requirements set forth in *Aguilar*.[6] *See United States v. Carmichael*, 489 F.2d 983 (7th Cir. 1973).

---

6. In *Commonwealth v. Davis*, 225 Pa. Superior Ct. 242, 310 A.2d 334 (1973), we noted that "[s]ince neither the reliability of the informant's informer was ever shown, nor the circumstances from which he concluded that appellant may have been in posses-

Appellant cites *Commonwealth v. Abbruzzese,* 223 Pa. Superior Ct. 452, 302 A.2d 853 (1973), for authority that a statement against interest by an informant must incriminate the informant in the *same* crimes as the ones charged against appellant. Although Bester's statements did not incriminate him in the exact same crimes allegedly committed by appellant, they did associate him with recent burglaries of service stations and body shops that were under investigation by the police. We are satisfied that the crimes were sufficiently connected and that Bester's statements were not merely "self-serving." In fact, Bester, unlike the informant in *Abbruzzese,* was apparently not under arrest at the time he gave the incriminating statements.

We, therefore, hold that the March 28 search warrant was based on probable cause. The stolen tools obtained by the police as a result of their search of the Wimer Auto Body Shop were properly admitted into evidence.

We also agree with the Commonwealth that Trooper Bard did not exceed the limits of his search when he jotted down the serial numbers of three automobiles that were also in the shop. "Generally, a search under a search warrant may extend to all parts of the premises described in the warrant where the items sought may reasonably be expected to be found." *Commonwealth v. Jackson,* 227 Pa. Superior Ct. 1, 8, 323 A.2d 799, 803 (1974). Although the search warrant of March 28 enumerated certain tools (spray guns, sanders and wrenches) as the property to be seized, this does not mean that the troopers could not investigate other incriminating evidence observed in plain view. However, the plain view doctrine may help the Commonwealth only if the original intrusion by the troopers into the body shop was justified and they

---

sion of drugs ever communicated to the magistrate, the tip does not even approach the requirements of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509 (1964). . . ." *Id.* at 244 n.2, 310 A.2d at 336 n.2.

inadvertently viewed the incriminating evidence. *See Coolidge v. New Hampshire,* 403 U.S. 443 (1971); *United States v. Davis,* 461 F.2d 1026 (3d Cir. 1972); *United States v. Winston,* 373 F. Supp. 1005 (E.D. Mich. 1974).

Applying the plain view doctrine to the facts of this case we note that first, as already discussed, the original intrusion by the troopers was justified by the valid search warrant they possessed. Second, the troopers in this case were not looking for stolen vehicles. Thus, Trooper Bard's observation of the different vehicles in the body shop was truly inadvertent. Third, Trooper Bard's suspicions that the vehicles were of an incriminating nature were based on the following facts revealed at trial by Trooper Bard's testimony: "I wrote down the manufacturer's serial number of the vehicle, because I, the reason I wrote it down was I couldn't understand why the vehicle was being torn apart. There was no apparent damage to any extent on the fenders or the hood. . . ." Notes of Trial Testimony at 24. A few moments later Trooper Bard was asked whether all the parts of the stolen vehicle were present at the body shop. Trooper Bard replied: "No, I don't believe. I don't—the seats weren't there." Q.: "Where were the seats?" A.: "The seats were at the Schweinsberg residence." *Id.* at 41. This testimony makes it apparent that Trooper Bard upon viewing the vehicles reasonably believed that some of them may have been stolen.[7] Al-

---

7. Although this testimony was not presented by the Commonwealth at the suppression hearing, we find it relevant to the issue of admissibility of the challenged evidence. After the conviction of a defendant following the denial of his motion to suppress certain evidence, a defendant "will then have an opportunity to secure an appellate evaluation of the propriety and admissibility of such evidence." *Commonwealth v. Bosurgi,* 411 Pa. 56, 64, 190 A.2d 304, 309 (1963). An appellate court should be able to consider all the testimony on record to determine whether certain evidence was constitutionally admissible at trial, not just the testimony at the suppression hearing. *See Commonwealth v. De-Michel,* 442 Pa. 553, 277 A.2d 159 (1971) (testimony presented at

though a closer observation of the vehicle was necessary to obtain its serial number and such conduct may have constituted a search, *see United States v. Gray,* 484 F.2d 352 (6th Cir. 1973), *cert. denied,* 414 U.S. 1158 (1974), we find that the search was reasonable under the circumstances. The appearance of the vehicle, stripped of many undamaged parts, was of a highly suspicious nature justifying further investigation by the trooper. *See United States v. Winston,* 373 F. Supp. 1005 (E.D. Mich. 1974). In conclusion, we hold that Trooper Bard's examination of the different vehicles he found in the body shop was proper under the plain view doctrine.[8]

Judgment affirmed.

HOFFMAN and SPAETH, JJ., concur in the result.

---

trial but not at suppression hearing may be considered by trial judge to determine whether evidence was obtained by unconstitutional means).

8. No argument is made by appellant regarding the plain view discovery of the absence of serial numbers on the 1970 Ford Maverick by Trooper Bard during the March 29 search. Consequently, that issue will not be discussed in this opinion.