448 A.2d 538

COMMONWEALTH of Pennsylvania, Appellant,

v.

Roy L. HAMLIN, Appellee.

Superior Court of Pennsylvania.

Argued Feb. 9, 1982.

Filed May 28, 1982.

Reargument En Banc Denied Aug. 17, 1982.

Stella L. Smetanka, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Robert L. Simmons, Pittsburgh, for appellee.

Before BROSKY, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge:

■ This is an appeal by the Commonwealth from the grant of appellee's, Roy L. Hamlin's, Motion to Suppress on April 21, 1981, by the Court of Common Pleas of Allegheny County. We reverse and remand.[1]

[1]. It is settled that the Commonwealth has a right to appeal the grant of a suppression motion, provided that the appeal involves a pure question of law and the suppression effectively terminates or substantially handicaps the prosecution. *See, e.g., Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963); *Commonwealth v. Kunkel,* 254 Pa.Super. 5, 385 A.2d 496 (1978). The present case satisfies such criteria.

We note that the appellee questions the jurisdiction of this Court to hear the instant case, claiming that since the Commonwealth failed

The facts, as garnered from the record, consist of the following: About 10:00 A.M. on September 5, 1980, Lieutenant Charles E. Coughlin, a City of McKeesport police officer, drafted an application for a search of the appellee's residence. At 1:30 P.M., the application was taken to the District Magistrate. The Magistrate approved the warrant, which authorized the affiant to search the premises described "as soon as practicable but in no event later than *8:00 A.M. . . . Sept. 8, 1980.*" After securing the warrant, Lt. Coughlin informed the search team that it would be executed at 7:00 A.M. the next morning, September 6th. At the scheduled time, the police met at the station and then made their way to the appellee's premises, arriving at the location about 7:45 A.M. At first, Lt. Coughlin knocked on a set of storm doors on the exterior portion of the two-story apartment building and identified himself. Upon receiving no response, the officer entered a vestibule area and knocked on another door, again giving his identity. Still, there was no answer. After waiting for a period of time, Lt. Coughlin opened the main door to the building and went to appellee's door, which was the first one on the right. He knocked 10 or 12 times, and even kicked on the bottom of

to appeal the lower court's suppression of the search warrant and evidence in a co-defendant's (Theresa Dreher's) case, it is estopped from relitigating the suppressability question now. This contention is specious. It must be remembered that in the context of criminal litigation, the concept of mutuality has retained its vitality. That is, collateral estoppel has generally been applied only in those criminal cases involving defendants who were parties to the prior adjudication. *See Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Commonwealth v. Brown,* 473 Pa. 458, 463, 375 A.2d 331, 334 (1977) (citing cases); *see generally* Anno., 9 A.L.R.3d 203 (1966). Instantly, the lower court conducted two separate suppression hearings. In the first, in which the court ruled in favor of the co-defendant, appellee was not a party to the motion; thus, it cannot be said that a factual finding favorable to the appellee was entered in the suppression hearing, nor were any of his rights being litigated therein. *Commonwealth v. Brown, supra.* Additionally, " ' "Because there may have been a miscarriage of justice as to one joint offender is no reason why there should also be a miscarriage of justice as to the other joint offender." ' *Roberts v. People,* 103 Colo. 250, 261, 87 P.2d 251, 257 (1938)." *Id.,* 473 Pa. at 466, 375 A.2d at 335. Consequently, the Commonwealth is not foreclosed from appealing the order of the suppression court.

the door, while "holler[ing] 'Police, police, we have a search warrant.'" (RR. 23a) Lt. Coughlin received no answer, yet he heard voices inside the apartment. The officer, for the next three minutes, continued to knock, all the while announcing his identity and purpose. When his efforts to obtain access to the apartment proved fruitless, he utilized a key secured from the landlord to gain entry. Once inside, the police observed the appellee and a Ms. Dreker (a co-defendant) in the room. Lt. Coughlin identified himself and gave the appellee a copy of the warrant. A search of the premises produced a quantity of cocaine and resulted in the occupants being arrested.

A suppression hearing was held in the instant case. At that time, Lt. Coughlin recounted how the search warrant was prepared on September 5, 1980 and issued by the Magistrate that same day, around 2:00 P.M. However, the defense pointed out that the face of the warrant indicated to the contrary, i.e., that it was issued on the 6th day of September, 1980, at 8:00 A.M. To clarify the matter, the Magistrate testified that he *erred* when filling in the spaces provided for on the document as to the *date and time* the warrant was issued. The witness attributed this misfeasance to the fact that when the police informed him that "they were going to search the place the next morning at eight o'clock. . . . [he] made the mistake. [He] put the 6th day, eight o'clock, when he signed it[,]" (RR. 42a), instead of September 5th at 2:00 P.M.

The suppression court disbelieved the Magistrate's version that the error was the product of "an honest mistake." Instead, the court found "that the warrant was deliberately post-dated rather than misdated." Consequently, all evidence seized pursuant to the invalidly issued warrant was suppressed. This appeal followed.

The Commonwealth asserts that the court abused its discretion in concluding from the evidence adduced at the suppression hearing that the date which the Magistrate noted on the search warrant was a purposeful act. Furthermore, the Commonwealth contends that appellee suffered no

violation of his Fourth Amendment rights as a result of the misdating. We agree.

▮ As was stated in *Commonwealth v. Johnson*, 467 Pa. 146, 151–52, 354 A.2d 886, 889 (1976):

"In reviewing th[e] ruling [of a suppression court,] our initial task is to determine whether the factual findings are supported by the record. 'In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted.' *Commonwealth v. Goodwin*, 460 Pa. 516, 522, 333 A.2d 892, 895 (1975). If, when so viewed, the evidence supports the factual findings we are bound by such findings; we may only reverse if the legal conclusions drawn therefrom are in error." (Footnote omitted)

Reviewing the Commonwealth's argument in light of this standard, we are convinced the suppression court was incorrect in ruling that *the evidence seized was the product of an illegally drawn search warrant.*

In making a determination as to the legal effect of the issuing authority's affixing the wrong date and time to the warrant, this Court looks to the decisions in *Commonwealth v. Swint*, 256 Pa.Super. 169, 389 A.2d 654 (1978) and *Commonwealth v. Chinea*, 246 Pa.Super. 494, 371 A.2d 944 (1977) for guidance. Before doing so, however, we observe that Pa.R.Crim.P. 2005 requires, *inter alia*, that a search warrant shall specify *the date and time of its issuance.* Nonetheless, Rule 2005 has not been interpreted in such a hypertechnical manner so as to equate *all errors* associated with the issuance of a warrant to be violative of one's Fourth Amendment rights. For example, in *Commonwealth v. Chinea, supra*, the officers applied for a warrant on November 18, 1975, and executed it the same day. Evidence was presented that the warrant affidavit was sworn to and subscribed on November 18, 1975. However, the magistrate inadvertently entered the following time of issuance: "Issued under my hand this 18th day of 1975, 1975, at 5:00 p. m. o'clock."

*Id.,* 246 Pa.Super. at 496, 371 A.2d at 945. The lower court suppressed the evidence because the date of issuance was missing in violation of Rule 2005. On appeal, we disagreed with this determination and, in reversing, stated:

> "The time limit for execution set by the magistrate was November 20, 1975, at 5:00 p. m., precisely the two-day time limit prescribed by Rule 2005(d), Pa.R.Crim.P., if one assumes that the warrant was issued on November 18, 1975, at 5:00 p. m. Thus, we reach the inescapable conclusion that when the Magistrate entered the 18th day of 1975, [sic] 1975, she clearly meant to enter November 18, 1975, as the date of issuance. Because the omission of the month from the date of issuance of the warrant does not deprive either the suppression court or this Court of the requisite information to determine that the warrant was properly issued and executed, we hold that it was error for the lower court to suppress the evidence seized in the November 18, 1975 gambling raid." *Id.,* 246 Pa.Super. at 497, 371 A.2d at 946.

The rationale utilized in *Chinea* was the basis for our ruling in *Commonwealth v. Swint, supra,* wherein the lower court held that the warrant was "patently defective" and, therefore, not lawful since the issuing authority had written a date on the search warrant when he signed it which was one day earlier than the date the affiant sought the application. From our review of the evidence, we concluded that the questionable date (July 15, 1976), which appeared in the warrant affidavit to indicate when information was received by the affiant to secure the warrant, was an inadvertent error of the issuing authority. Such determination was predicated not only upon the absence of any record evidence to intimate any impropriety by the issuing authority (i.e., signing the warrant in blank and filling it in at a later time), but, more importantly, the affiant's "unchallenged testimony that the warrant was sought, issued and executed all on July 16, 1976." *Commonwealth v. Swint, supra,* 256 Pa.Super. at 173, 389 A.2d at 657.

■   The incorrect date and time occasioned by the issuing authority's mistake in the case at bar, like the misdating in *Swint* and the error in *Chinea*, did not leave the suppression court or this Court unable to review the propriety of the issuance and execution of the warrant. Instantly, we are confronted with the uncontroverted testimony of Lt. Coughlin and the District Magistrate that the warrant was applied for on September 5, 1980, and executed the next day, which is precisely within the two-day time limit prescribed by Pa.R.Crim.P. 2005(d), "if one assumes that the warrant was issued on [September 5, 1980, at 2:00 P.M.]" *Commonwealth v. Chinea, supra,* 246 Pa.Super. at 497, 371 A.2d at 946. Thus, as did the court in *Chinea,* we reach the inescapable conclusion that when the District Magistrate entered: "Issued under my hand this 6th day of Sept, 1980, at 8:00 A.M. o'clock", he clearly intended to enter September 5, 1980, at 2:00 P.M., as the date of issuance. *Id.* This conclusion comports with the tenet that, "searches conducted pursuant to warrants are to be favored over warrantless searches and thus '. . . must be tested with a commonsense, nontechnical, ungrudging and positive attitude . . . .' " (Citation omitted) *Commonwealth v. Wilds,* 240 Pa.Super. 278, 286, 362 A.2d 273, 277 (1976).

Additionally, we cannot discount the fact that appellant has failed to show how he has been prejudiced by the mistake, and, thus, we can perceive of no reason why he should enjoy the windfall of having the evidence suppressed under the guise of precluding the Commonwealth from, as the lower court phrased it, "play[ing] fast and loose with a search warrant." (Lower Court Opinion at 2) Our review of the evidence lends no credence to such characterization by the lower court. Quite the contrary, we observe, in considering the evidence of the prosecution's witnesses, *Commonwealth v. Johnson, supra,* that the police executed the warrant well within the time strictures of Pa.R.Crim.P. 2005; therefore, we can perceive of no advantage accruing to the authorities by having the document postdated. More-

over, our examination of the record indicates that there is insufficient evidence to prove that the police and/or District Magistrate altered or filled in the document subsequent to the search to legitimize the seizure occasioned by its execution. As a result, given the facts of record, we disagree with the legal conclusions drawn therefrom by the lower court. *Commonwealth v. Johnson, supra.*

Accordingly, we reverse the order of April 21, 1981, and remand for further proceedings.[2] Jurisdiction is not retained by this Court.

BROSKY, J., files dissenting opinion.

BROSKY, Judge, dissenting:

I respectfully dissent.

In *Commonwealth v. Melton,* 402 Pa. 628, 629, 168 A.2d 328, 329 (1961), our Supreme Court said:

It is only where the question involved is purely one of law that the Commonwealth may appeal from an adverse ruling in a criminal case. . . . Where . . . the reason for the action of the trial court, whereof the Commonwealth complains, *is based upon a mixture of law and fact, the Commonwealth is without any right to appeal therefrom.*

(Emphasis added.) See also: *Commonwealth v. Ray,* 448 Pa. 307, 312, 292 A.2d 410, 413 (1977); *Commonwealth v. Iacavazzi,* 297 Pa.Super. 200, 204, 443 A.2d 795, 797 (1981); *Commonwealth v. Kunkel,* 254 Pa.Super. 5, 385 A.2d 496 (1979); *Commonwealth v. DeFelice,* 248 Pa.Super. 516, 522, 375 A.2d 360, 363 (1977). I would hold that the Commonwealth cannot appeal from the order of the trial court.

2. Since, as the Commonwealth concedes, the probable cause section of the warrant "was not a subject of appellee's Suppression Hearing[,]" we decline the Commonwealth's invitation to review the probable cause portion of the warrant in the case at bar. This Court is not in the practice of rendering advisory opinions on questions which have not been fully briefed and argued below; to do otherwise, would be presumptive of the lower court's determination on remand.

The suppression court judge, Judge Maurice Louik, correctly stated in his opinion for the court:

It is within the discretion of the trial Court whether or not to allow amendments under Rule 150 of the Pa.R. Crim.P. *Commonwealth v. Lardo*, 240 Pa.Super. 107, 368 A.2d 324, 329 (1976). Since this Court finds that the search warrant was improperly issued, i.e., it was postdated, the Commonwealth will not be permitted to amend the warrant.

The issuing magistrate, Howard D. Lindberg, appears to have purposely postdated the search warrant. Mr. Lindberg testified that he was told the police intended to execute the warrant at 8:00 A.M. on September 6. He then assigned a time of issuance that was identical to the intended time of the search.

It was not contended by the Commonwealth that the magistrate mistakenly wrote 8:00 A.M. September 6, 1980 instead of 2:00 P.M. September 5, 1980. It appears that the time of 8:00 A.M. September 6, 1980 was purposely and deliberately inserted instead of the actual time when the warrant was issued.

The Commonwealth finds itself on the horns of a dilemma. If the warrant was issued on September 5, 1980, at 2:00 P.M., it was postdated and improper. If the warrant was issued and intended to be issued at 8:00 A.M. September 6, 1980, it was improperly executed prior to the time of issuance. *Commonwealth v. Swint*, 256 Pa.Super. 169, 389 A.2d 654 (1978), is inapplicable to the instant case; since this Court finds that the warrant was deliberately postdated rather than misdated. Also, *Commonwealth v. Chinea*, 246 Pa.Super. 494, 371 A.2d 944 (1974), is inapplicable, since the postdating of a search warrant cannot be equated with "a minor typographical error."

(Trial Court Opinion Pages 1–2) I agree with Judge Louik's opinion. Therefore, I cannot agree with the majority that an appeal by the Commonwealth is permitted.

Clearly, if this were an error which I could reasonably find involved the unintentional misdating of a search warrant, *Commonwealth v. Swint*, 256 Pa.Super. 169, 389 A.2d 654 (1978), or "a minor typographical error," *Commonwealth v. Chinea*, 246 Pa.Super. 494, 371 A.2d 944 (1974), I would agree that the Commonwealth could appeal. Under those circumstances, I would hold that the decision of the trial court was "purely one of law." However, as Judge Louik indicates in his opinion, the decision of the suppression court required a factual determination as to whether the search warrant was or was not deliberately postdated. The decision depended in its entirety upon the suppression court's appraisal of the credibility of the testimony of the magistrate. The court found the magistrate's testimony incredible. Certainly, this is a factual decision.[1] Accordingly, I would hold that the reason for the suppression court's holding was "based upon a mixture of law and fact, . . ." I would quash the Commonwealth's appeal.

1. The majority's opinion supports this contention. The majority specifically decided that a finding of *fact* by the lower court was incorrect. Instead, the majority chooses to act as a factfinder and states that it agrees with the Commonwealth that the evidence should have required a different decision:

> The suppression court disbelieved the Magistrate's version that the error was the product of "an honest mistake." Instead, the court found "that the warrant was deliberately post-dated rather than misdated." Consequently, all evidence seized pursuant to the invalidly issued warrant was suppressed. This appeal followed.
> The Commonwealth asserts that the court abused its discretion in concluding from the evidence adduced at the suppression hearing that the date which the Magistrate noted on the search warrant was a purposeful act. Furthermore, the Commonwealth contends that appellee suffered no violation of his Fourth Amendment rights as a result of the misdating. We agree.

(Page 540.)

The majority contends further that the suppression court's decision was improper. Even if I were to agree that an appeal could be brought by the Commonwealth, the standard of review, as the majority states, is "abuse of discretion." I would not hold that the trial court abused its discretion in finding that the magistrate misdated the warrant deliberately. I note that the majority fails to specifically find that the suppression court abused its discretion. This court cannot reverse a decision, herein, simply because we disagree with the suppression court's finding, rather, we must determine that that court abused its discretion before we can reverse its decision.