450 A.2d 694

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John IANNACCIO.**

Superior Court of Pennsylvania.

Submitted April 12, 1982.

Filed Sept. 3, 1982.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellant.

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge.

This is an appeal from the order of the Court of Common Pleas of Allegheny County directing the Commonwealth to produce a confidential informant *in camera*.[1] Based on the particular facts of this case, we reverse.

A review of the facts reveal the following: On August 15, 1978, Detectives Mullen and Butler secured a warrant to search the premises of the appellee, John Iannaccio, located at 5129 Roma Way, Pittsburgh, Pa. The probable cause section of the warrant read:

"Affiants received information from a confidential reliable informant that John Iannaccio Jr. aka Jack was dealing and concealing LSD from the above described premises. Informant stated that he was in the premises within the past 24 hours and did observe Jack sell LSD to an unknown white female, who appeared to be around 16 years old. Informant stated that Jack was charging $3.00 apiece for the LSD. Informant stated that he oberved [sic] several small tablets which Jack stated that he was going to sell for $3.00 apiece, but would sell them cheaper if the buyer bought in quantity. Informant has proven to be reliable by giving information which has led to the

1. By Per Curiam order dated July 29, 1980, this Court granted the Commonwealth's petition for permission to appeal from the lower court's order. 42 Pa.C.S.A. § 702(b) (Interlocutory appeals by permission); Pa.R.App.P. 1311(b).

arrest and conviction of James Payne jr., Darryl Robinson and Gregory Beal all for VCSSDCA, [sic] The most recent conviction being that Beal [sic] in June of 1978."

The warrant was executed the day it was issued, and, as a result thereof, drugs were seized on the premises searched. Also, appellee was arrested at the scene. Thereafter, following a preliminary arraignment, appellee was charged by Information with possession of controlled substances,[2] possession with intent to deliver controlled substances,[3] possession of a small amount of a controlled substance[4] and former convict not to carry a firearm.[5]

On November 13, 1978, appellee's counsel served upon the Office of the District Attorney of Allegheny County a demand for discovery, pursuant to Pa.R.Crim.P. 305 A,[6] which sought, *inter alia,* disclosure of the informant referred to in the application for a search warrant. The Commonwealth refused the request. Appellee then presented the lower court with a motion for relief under Pa.R.Crim.P. 305 E,[7] seeking the court to apply the sanction of Rule 305 E,

**2.** 35 P.S. § 780–113(a)(16).

**3.** *Id.* at § 780–113(a)(30).

**4.** *Id.* at § 780–113(a)(31).

**5.** 18 Pa.C.S.A. § 6105.

**6.** Rule 305 A reads:
Before any disclosure or discovery can be sought under these rules by either party, counsel for the parties shall make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute. When there are items requested by one party which the other party has refused to disclose, the demanding party may make appropriate motion to the court. Such motion shall be made within fourteen (14) days after arraignment, unless the time for filing is extended by the court. In such motion the party must set forth the fact that a good faith effort to discuss the requested material has taken place and proved unsuccessful. Nothing in this provision shall delay the disclosure of any items agreed upon by the parties pending resolution of any motion for discovery.

**7.** Rule 305 E reads:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with

and prohibit the District Attorney from introducing at the time of trial, as evidence, the information not disclosed; or, in the alternative, such order as the court deemed just under the circumstances. Such motion was denied. Thereafter, appellee filed an omnibus pretrial motion seeking suppression of all the evidence seized pursuant to the warrant in question. A hearing on said motion was scheduled to be held on the date set for trial. However, before the case was listed for trial, appellee filed a motion for reconsideration under Rule 305 E, seeking the disclosure of the informant's identity "not to aid him in his defense against [the] charges, but rather to afford him an adequate opportunity to challenge the veracity of the sworn statement included by the police in securing the search warrant." By so doing, appellee sought "to establish that the evidence relied upon by the affiant included a material false statement that the affiant knowingly and deliberately or with reckless disregard for the truth acted upon said information[.]" A hearing on the reconsideration motion was held, and, at the completion of same, the court ordered the Commonwealth to produce the informant *in camera*. However, on oral motion by the Commonwealth, the court set January 4–5, 1979, as the time for a hearing to reconsider its order.

At the proceeding, Det. William Mullen testified that on August 15, 1978, he received a phone call from an informant known to him for some 3½ years—this individual had supplied the officer with information leading to arrests and/or convictions in about eight cases. The caller requested that the two meet at approximately 9:00 a. m., near a back door to the Public Safety Building. At the scheduled time and place, the informant appeared and told the witness that he had been to the appellee's residence within the last twenty-four hours in the company of a female, that the female knew the appellee and that she was observed buying drugs

this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

from the accused. Based on this information, the police, without any prior surveillance or observance of suspicious activity on the premises, secured and executed a search warrant of the appellee's home, at approximately 10:45 a. m. During the course of the search, various types of drugs were seized and the appellee was arrested on the scene.

The appellee's case consisted of a defense of "mistaken identity." In support thereof, appellee's father and mother, with whom the appellee had lived with all of his life, testified to his whereabouts during the 24-hour period immediately preceding his arrest. To explicate, the father recounted getting up at 10:30 a. m. on August 14, 1978, and not leaving the premises before 6:30 p. m., when he left to play bingo at a nearby church. The father stated he returned home at 10:45 p. m., but, before going to bed, he stayed up until 2:30 a. m. to watch television in the living room. Also, at this point in the evening, the father noted that his son had yet to return from a week-long trip to Atlantic City, New Jersey. In fact, it was not until 7:00 a. m. on the morning of the 15th of August, when the witness awoke to take some pills, that he went downstairs and noticed a set of luggage resting on the living room floor. The witness proceeded to the appellee's room and found his son sleeping. Thereafter, the witness went back to bed and slept until the police arrived.

The next witness to appear for the defense was appellee's mother. Mrs. Iannaccio testified that during the time that her husband went to play bingo, on the evening of the 14th of August, she remained home alone. She also recalled that when she went to bed at 2:00 a. m., her son had not yet returned from his trip to Atlantic City. Further, albeit the witness could not say for certain when her son returned home, she remembered hearing a vehicle and then a single set of footsteps in her home between 5:00 and 6:00 a. m. The witness went on to remark that she got up about 6:00 or 7:00 a. m. and "noticed a form" in her son's bed. She then walked downstairs to read the newspaper, and, she stated, no one came to the house while she was up, save for the police.

At the conclusion of the hearing, the court reaffirmed its earlier order and, in addition, certified the case for appeal to this Court, which we granted. *See* note 1, *supra.*

In determining that the lower court erred regarding its finding of fact as to the Commonwealth's case, we never reach the question which was specifically reserved by the United States Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 170, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978), and as of yet not ruled upon in this jurisdiction—i.e., whether a reviewing court must ever require the disclosure of the identity of an informant once a substantial preliminary showing of falsity has been made. *But see United States v. Hurse,* 453 F.2d 128, 130–31 (8th Cir. 1971), *cert. denied,* 414 U.S. 908, 94 S.Ct. 245, 38 L.Ed.2d 146 (1973); *United States v. Swanson,* 399 F.Supp. 441 (D.Nev.1975); *United States v. Danesi,* 342 F.Supp. 889 (D.Conn.1972); *State v. Luciow,* 308 Minn. 6, 240 N.W.2d 833 (1976).

To begin with, although the proceeding below was not captioned a suppression hearing, we will treat it as such, inasmuch as the lower court's conclusion to discredit the affiant's testimony, if upheld even after the production of the informant, would have rendered the warrant invalid and the evidence seized as a result thereof suppressible. (RR. 61A–62A) Having established the procedural posture of the case at bar, we next observe that in Pennsylvania it is well established that criminal defendants have a right to go beyond the "four corners" of the search warrant and challenge deliberate and material misstatements of the government affiant. *Commonwealth v. Bradshaw,* 290 Pa.Super. 162, 434 A.2d 181 (1981). However, it is the Commonwealth, and not the defendant, that has the initial burden of going forward with evidence and of establishing that the challenged evidence was not obtained in violation of defendant's rights. The rationale for such a holding was set forth by this Court in *Commonwealth v. Ryan,* 296 Pa.Super. 222, 229–230, 442 A.2d 739, 743 (1982), wherein we stated, concerning the defendant's right to test the veracity of the information contained in a search warrant:

" 'The burden is on the Commonwealth to establish the validity of the search warrant and the burden is not carried by merely introducing the search warrant and affidavit with no supporting testimony because then the only way for the defendant to challenge the veracity of the information is to call witnesses himself and this effectively shifts onto him the burden of disproving the veracity of the information, an almost impossible burden. *If the procedure followed by the Commonwealth in this case were upheld then policemen could recite in an affidavit as probable cause for the issuance of a search warrant any and all statements which they felt were of help in obtaining the warrant, irrespective of the truth or veracity of those statements, their legality or illegality, or constitutionality or unconstitutionality, realizing that such statements would be insulated from defendant's right to cross-examination since the Commonwealth did not have to call witnesses who would be subject to cross-examination to establish the facts necessary to support the issuance of the search warrant.* Therefore, we must hold that the Commonwealth failed to carry its burden of proof at the suppression hearing. To rule otherwise would permit police in every case to exaggerate or to expand on the facts given to the issuing authority merely for the purpose of meeting the probable cause requirement, thus precluding an objective determination of whether probable cause for the warrant existed.' " (Citation omitted) (Emphasis added)

 Before examining the facts instantly, we observe that "[u]nder our standard of review of suppression court hearings, the findings of the trier of fact, *supported by the record,* may not be disturbed. *Commonwealth v. Sparrow,* 471 Pa. 490, 497, 370 A.2d 712, 715 (1977)." (Emphasis added) *Commonwealth v. Martin,* 481 Pa. 515, 520, 393 A.2d 23, 25 (1978). Where, as here, a suppression court has made a specific finding of fact (i.e., the affiant's credibility,) and such finding is wholly lacking support in the record, we are not bound by it. *See Commonwealth v. Wright,* 474 Pa. 92,

376 A.2d 988 (1977). *Accord Culombe v. Connecticut,* 367
U.S. 568, 603, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961)
("Where they[—the State courts—]have made explicit find-
ings of fact, those findings conclude us and form the basis of
our review—with one *caveat,* necessarily, that we are not to
be bound by findings wholly lacking in evidence. *See
Thompson v. City of Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4
L.Ed.2d 654 [ (1960) ]."); *see also Schmidt v. Hewitt,* 573
F.2d 794 (3rd Cir. 1978). In making this determination, we
are to consider only the evidence of the prosecution's wit-
nesses and so much evidence of the defense as, fairly read in
the context of the record as a whole, remains uncontradict-
ed. *Culombe v. Connecticut, supra,* 367 U.S. at 604, 81 S.Ct.
at 1880; *Commonwealth v. Hamlin,* 302 Pa.Super. 86, 448
A.2d 538.

With the basic principles delineated above in mind, a
review of the record is necessary. In the case *sub judice,* the
officer who received the information and conducted the
search that produced the incriminating evidence, a veteran
of five years with the Pittsburgh Police Department, testi-
fied: 1) that he had known the unpaid informant for ap-
proximately three, three and a half years; 2) that the
informant had supplied information in the past leading to
the arrests and/or convictions in some eight cases; and 3)
that the informant witnessed the appellee sell LSD to a
16-year old white female at the premises ultimately
searched.

Based on the information recited in the warrant
reproduced *supra,* the neutral magistrate had sufficient in-
formation from which to conclude that the informant was
"credible" and his information "reliable." *Aguilar v. Texas,*
378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964);
*Commonwealth v. Kaschik,* 235 Pa.Super. 388, 344 A.2d 519
(1975); *see also Commonwealth v. Luddy,* 281 Pa.Super. 541,
422 A.2d 601 (1980). Moreover, as a general proposition, the
legality of a search warrant depends upon the sufficiency of
the underlying affidavit on its face and the question is
whether the magistrate could determine the existence of

probable cause upon the matter asserted in such affidavit. *United States v. Bolton,* 458 F.2d 377 (9th Cir. 1972). In light of the facts here, there is no reason to overturn the magistrate's implicit finding that the officer reasonably believed the informant to be reliable and credible. *See United States v. Valenzuela,* 596 F.2d 824 (9th Cir. 1979), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071. The officer who testified, in open court, did so fully and in precise detail as to what the informer told him and as to why he had reason to believe the information was truthful. The officer was under oath, was subject to cross-examination and never wavered from his position as to the facts surrounding the securing of the warrant, nor did he alter his view as to the existence of the confidential informant. To substantiate such facts, the Commonwealth offered Det. Mullen's partner (Det. Butler), who was present when the informant relayed his information concerning the appellee, to the defense for cross-examination. The prosecution felt "that his testimony would be corroborative and accumulative of that of Detective Mullen[,]" (RR. 94A), and saw no need to examine such witness. The defense did not accept the prosecution's offer to question the witness, despite the opportunity to do so. This abstention was rather ill-advised since the issue of probable cause to execute the search warrant was predicated, at least in part, upon the credibility of the affiant.[8]

Here, the defense had the opportunity to offer any evidence that may have been available to challenge the propriety of the warrant, and failed to exercise that right to

---

8. It is interesting to observe, despite the lower court's initial determination on the issue of credibility, the opinion the trier of fact had regarding the officers in question; *viz.:*

"THE COURT: Excuse me. May I interrupt right here?

*Detective Mullen,* I know and most of the people in this courtroom know that *you and your partner, Francis Butler, are two of the most able and effective police officers in the City;* and you know an awful, awful lot of people; and you say to me that this informant meets with you in person somewhere but that person can't meet with me. Is that what you are saying?" (Emphasis added) (RR. 73A)

its fullest potential; e.g., cross-examining all possible witnesses who would have shed light on the question of probable cause or attacking the informant as to the legitimacy ("existence") of the prior arrests and/or convictions provided to the police as the basis for his reliability. On this exact point, we note some of the cogent observations made by LaFave, in his treatise on the Fourth Amendment, that bear repeating:

> "The McCray[v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967)] case
>
>> specifies no standard to guide the judge's discretion, other than that he be 'satisfied' of the informant's reliability. Presumably this means that, if the officer makes a good witness, his story will be accepted without scrutinizing the underpinnings. Perhaps the vagueness of the standard is not of great consequence if * * * his decision is unreviewable on appeal, like the discretion on sentencing. But does this give the moving party a fair hearing of his challenge to probable cause, especially if he has made a substantial preliminary challenge to the very existence of the informer? *Such an issue is not like the determination of sentence, for which purpose the judge is entitled to roam outside the record and play his hunches.* It is the kind of issue that traditionally is determined on a record and is reviewable on appeal."
>> (Footnote omitted) (Emphasis added) LaFave, Wayne R., Search and Seizure: A Treatise on the Fourth Amendment, Vol. 1, § 3.3 at 575 (1978).

Thus, in considering only the prosecution's evidence, and so much of the defense's evidence which remains uncontradicted, *see Culombe v. Connecticut, supra,* we find that the lower court abused its discretion in finding as a fact that the Commonwealth failed to prove the existence of probable cause to justify the issuance of the warrant. *See Commonwealth v. Hamlin, supra.* Stated conversely, we conclude that, premised on the clear and uncontroverted record, the Commonwealth satisfied its burden of proving the propriety of the warrant. *Commonwealth v. Ryan,* 296 Pa.Super. 222,

442 A.2d 739 (1982). Additionally, assuming for the purpose of discussion that appellee made a substantial preliminary showing of intentional falsity or reckless disregard for the truth which was necessary to the finding of probable cause by offering the testimony of his parents, we conclude that appellee failed to establish his allegation of the affiant's reckless disregard for the truth by a preponderance of the evidence.[9] *See United States v. House,* 604 F.2d 1135 (8th Cir. 1979).

It must be conceded that "[r]esolution of questions of credibility is for the trier of fact, [but] where as here, that resolution is [not] based on credible evidence, it will . . . be disturbed on appeal. *Commonwealth v. Whack,* 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Duncan,* 473 Pa. 62, 373 A.2d 1051 (1977)." *Commonwealth v. Penn,* 497 Pa. 232, 238, 439 A.2d 1154, 1157 (1982).

Based on the aforesaid, we determine that the lower court's factual finding, as it pertains to the affiant's credibility, is unsupported by the record, and, therefore, does not bind this Court. *See Culombe v. Connecticut, supra; Commonwealth v. Martin, supra; Commonwealth v. Wright, supra; Commonwealth v. Hamlin, supra.* Accordingly, we reverse the order of the lower court.

JOHNSON, J., files a dissenting statement.

JOHNSON, Judge, dissenting:

After a thorough review of both the record and the law, I must dissent. The lower court judge ordered the Commonwealth to produce its confidential informant *in camera* because the judge, after hearing and considering the evidence, determined that the existence of the informant was suspect. It is my belief that on the instant facts, this determination

**9.** We note for edification purposes, a determination by the lower court that the informant misrepresented the facts upon which the facially valid warrant was based would not be grounds to suppress the evidence; of course, to deny a motion to suppress, the information secured must have been obtained in good faith by the police on what appeared to be reliable information. *Commonwealth v. Bradshaw,* 290 Pa.Super. 162, 434 A.2d 181 (1981).

was justified. As our scope of review here is merely to decide whether the evidence supports the findings and legitimacy of conclusions drawn from these findings, *Commonwealth v. Guinther,* 290 Pa.Super. 441, 434 A.2d 834 (1981), I would affirm on the able Opinion of Judge McGregor below.